Daniel Freeman, plaintiff in error, v. Michael Lynch, Hiram P. Webb, and others, defendants in error.

1. **Taxes:** personal property. In the year 1857 the town of B. was located on the public lands, and surveyed and platted, the site being entered in 1859. The proprietors of the town reserved a block for a court house, but did not convey it to the county, and no county buildings were erected thereon. In 1871 F. erected a building on the block and occupied the same with his family until 1874, when, during the temporary absence of F. and his family, the county treasurer levied upon the buildings for delinquent taxes on *other* real estate of F., and moved the building into the street and sold it. Held, 1st, that the building was not personal property; 2d, that had it been it could not be moved before the sale.

2. ——: ——. It is not the policy of the law to separate houses occupied by families from the realty, and treat such houses as personal property for the purpose of collecting taxes.

3. **Real Property.** when houses become part of. When it is evident that houses were intended as permanent annexations to the freehold, they become a part of the realty, and pass with a conveyance of it, and that without regard to the character of the foundations on which they stand.

Error from the district court for Gage county. The case is stated in the opinion.

*O. P. Mason* and *L. W. Colby*, for plaintiff in error.

The defendants, county commissioners, claim the property as the property of Gage county, and under the pleadings the burden was on them to show that fact, but no evidence was introduced which would show a dedication of the block to the public. A dedication of a block to public uses can only be made by the owner of the property. *Hoole v. Attorney General*, 22 Ala., 190. *Mayor v. Franklin*, 12 Ga., 239. The evi-

dence fails to show who were the proprietors who dedicated this block to the public. True, the act of 1873 declares the dedication to be valid and ratifies the same, and declared that the title to the land is vested in Gage county. But no dedication had ever been made, and there was nothing to ratify.

*Lamb, Billingsley & Lambertson,* for defendants in error.

A dedication is the act of devoting or giving property for some proper object in such a manner as to conclude the owner. It may be by parol, and may be presumed from lapse of time. *Sims v. County Com. Otoe Co.,* 6 Neb., 129. A highway may be established by dedication of land by the owner to the public for that purpose. *Noyes v. Ward,* 19 Conn., 253–4. The same principle will apply to squares as to streets. *City of Cincinnati v. Lessees of White,* 6 Peters, 431. That the tract of land in controversy was dedicated to the public was recognized by the legislature of 1873, and the dedication ratified and confirmed under the provisions of section 3 of an act entitled "An act to quiet the title to certain portions of the city of Beatrice," which act was introduced in evidence. The evidence nowhere shows that plaintiff had any right or title to the tract in controversy. A statute describing the mode in which a highway or blocks may be laid out or dedicated to the public does not abridge the common law and right which previously existed to dedicate a right of way. The statute provides the way in which the land may be taken for highways without or against the owners' consent. *Noyes v. Ward,* 19 Conn., 257. It is not necessary that the land so dedicated should be used for the statutory limitation of time—a much shorter time is sufficient—on the principle that the owner has pursued

a line of conduct to lead others to adopt a particular course. 1 Greenleaf Evidence, 107, note 192. *Noyes v. Ward*, 19 Conn., 265. *Brown v. Wheeler*, 17 Conn., 345. *Roe v. Jerome*, 18 Conn., 138. If the dedication be unequivocal it may take place immediately. Angel on Highways, 142.

MAXWELL, CH. J.

In the year 1857 the town of Beatrice was located on the public lands, and surveyed and platted. The site was entered in the year 1859, and the proprietors of the town reserved from sale, with the intention of dedicating to the county, a block on which to erect a court house. This block is not designated by number on the plat of the town, but is marked with a pair of scales, and appears to have been known as "Court House Square." No conveyance appears to have been made to the county of the block in question, and the county has not erected a court house or any other building thereon.

In the year 1871, the plaintiff erected a dwelling house twenty-eight feet in length and fourteen feet in width on the block in question, and moved into the same with his family. In August, 1874, while the plantiff and his family were temporarily absent from home, the defendant, Lynch, who was deputy county treasurer, levied upon the house and outbuildings of the plaintiff upon the block in question, and thereupon removed the house into the street, the plaintiff's household goods being in the house at the time, and sold the house upon the street for certain delinquent taxes upon *other real estate* of the plaintiff. The county commissioners appear to have paid the expenses of removing the house, and immediately erected a fence around the block in question.

The plaintiff brought an action in the district court of Gage county against the defendants for the damages sustained by him. On the trial of the cause the jury returned a verdict for the defendants, upon which judgment was rendered. The cause is brought into this court by petition in error.

Was the house in controversy attached to the realty, or was it personal property? The term "fixtures" is always applied to articles of a personal nature which have been affixed to land. It is a very ancient maxim of the common law, that whatever is annexed to the realty thereby becomes a part of it, and partakes of its properties and incidents.

In *Elwes v. Mawe*, 3 East, 38, the court say: "Questions respecting the right to what are ordinarily called fixtures principally arise between three classes of persons: 1st, "Between different descriptions of representatives of the same owner of the inheritance, viz: between his heir and executor." In this case the rule obtains with the utmost rigor in favor of the inheritance and against the right to disannex therefrom, and to consider as personal property anything which has been affixed thereto. 2d. "Between the executors of a tenant for life and the remainderman, or reversioner," in which case the law is more favorably construed than between the heir and executor. "The third case, and that in which the greatest latitude and indulgence has always been allowed to have any particular articles considered as personal chattels as against the claimant in respect of freehold or inheritance, is the case between landlord and tenant."

The term "fixture", although always applied to personal property affixed to land, has acquired by the contradictory decisions of the courts a vague and ambiguous meaning. All the cases seem to agree that trade fixtures may be removed. It has been held that the

rolls in an iron mill, though lying loose in the mill, were fixtures. *Vorhis v. Freeman*, 2 Watts & Serg., 116. *Hill v. Sewald*, 53 Penn. St., 271. And a steam engine and boiler, engines and frame, designed to be used by such engine. *Sparks v. The State Bank*, 7 Blackf., 469. *Winslow v. Merchants Ins. Co.*, 4 Met., 306. *Sands v. Pfeiffer*, 10 Cal., 258. *Walmsley v. Milne*, 7 C. B. N. S., 115. *Voorhees v. McGinnis*, 48 N. Y., 285. *Pierce v. George*, 108 Mass., 82. Wash on R. P., 24. A dye-kettle set in brick. *Noble v. Bosnorth*, 19 Pick., 314. The mill wheel and gearing of a factory necessary to operate it. 1 Wash. on R. P., 25. *Powell v. Monson*, 3 Mason, 459. *Buckley v. Buckley*, 11 Barb., 43.

In the case of *Van Ness v. Pacard*, 2 Peters, 148, a tenant erected on leased premises a wooden dwelling-house, two stories high, with a shed of one story, having a cellar of stone or brick foundation, and a brick chimney for his business as dairyman, and the residence of his family. It was held that he might remove the house.

In *Smith v. Benson*, 1 Hill, 176, a building used as a grocery and dwelling-house was held to be personal property by force of an agreement that the tenant should have the right to remove it.

In *Dame v. Dame*, 38 N. H., 429, a dwelling-house and barn were erected upon the land of another, under an agreement that the builder might remove them when he saw fit. It was held that they remained the property of the builder.

In *Reid v. Kirk*, 12 Rich., 54, where a dwelling-house was erected on the land of another, with no agreement as to its removal, and was occupied rent free by the builder for thirty years, it was held that the builder had no right to remove it.

In *Powell v. McAshan*, 28 Mo., 70, it was held that

an agreement that the tenant might remove buildings, sheds, and other temporary houses and structures which he might erect, did not authorize him to remove improvements, the removal of which would cause material injury to the landlord.

In *Humphreys v. Newman*, 51 Me., 50, where the husband had erected a dwelling-house and outbuildings on his wife's land, it was held that they must be regarded as real estate, and were not liable for a debt of the husband incurred *after* their erection.

In *Keogh v. Daniel*, 12 Wis., 163, it was held that the tenant might, in the absence of any restrictions in the lease, remove his improvements, a general custom to that effect having prevailed in Milwaukee at the date of the lease, and for several years before.

In *Powers v. Dennison*, 30 Vt., 752, a house was erected upon the land of another under a verbal agreement that it might be removed at any time on three months' notice. Subsequently the owner of the land mortgaged it, and the mortgage having been foreclosed, the premises were sold to the plaintiff. It was held that the house was a fixture and a part of the freehold, and passed to the purchaser under the mortgage.

In *Fuller v. Tabor*, 39 Me., 519, where a house was erected upon land without the knowledge or consent of the owner of the land, but subsequently the owner of the land consented that it might remain there, it was held that the subsequent assent was equivalent to a prior agreement, and related back to the time the house was erected upon the land, and it remained the personal property of the builder.

Many other cases might be cited to the same effect. It will readily be seen that the cases cannot be reconciled with each other, and that no uniform rule can be drawn from these adjudications. Many of the early cases hold that it is necessary, in order to constitute a

fixture, that the article should be let into or united with the land, or to substances previously connected therewith. Amos and Ferrard on Fixtures, 2. And in some of the cases, this seems to have been the only criterion by which the question was determined. But this doctrine furnishes no criterion of uniform application, as will readily be seen from an examination of the authorities.

In *Wagner v. C. & T. R. Co.*, 22 Ohio State, 563, it was held that stone piers built by a railroad company as a part of its railroad, on lands over which it had acquired the right of way for its road, do not, though firmly imbedded in the earth, become the property of the owner of the land as a part of the realty; and on the purpose of completing the railroad being abandoned, the company might remove such structures as personal property, although the earth had been excavated and the piers built upon the rock.

In *Corwin v. Cowan*, 12 Ohio State, 629, it was held that the stone and other materials out of which certain locks in the Warren county canal had been constructed, did not revert to the owners of the freehold with the abandonment of the canal. See also the case of *N. C. R. v. Canton Co.*, 30 Md., 355.

In *Buckland v. Butterfield*, 2 Brod. & Bingh., 54, it was held that a conservatory for pleasure, not trade, which had been erected by the tenant, could not be removed. A large number of cases hold that as between landlord and tenant, fixtures must be removed during the term. An examination of the cases will show the want of a settled, unvarying standard by which it can be determined what constitutes a fixture.

The supreme court of Ohio, in *Teaff v. Hewitt*, 1 Ohio State, 529, say: " The following requisites will be found the safest criterion of a fixture:

"1st.   Actual annexation to the realty, or something appurtenant thereto.

"2d.   Appropriation to the use or purpose of that part of the realty with which it is connected.

"3d.   The intention of the party making the annexation to make the article a permanent accession to the freehold.  This intention being inferred from the nature of the articles affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made."   These rules seem to furnish a test by which the essential qualities of a fixture, in most cases, can be determined, and make the *intention* of the party making the annexation the material inquiry.   And this intention is to be gathered from the nature of the article affixed, the relation and situation of the party making the annexation, and the structure and mode of annexation.

Parties by contract may make such arrangements as to the removal of fixtures as they see fit.  In its correct sense, the term "fixtures" includes such things only of a personal character as have been annexed to the realty, and which may be afterwards severed or removed by the party who united them, or his personal representatives, against the will of the owner of the freehold.   Broom's Legal Maxims, 419, and cases cited. The term is often used, however, to designate those articles which are not by law removable when once attached to the freehold, as well as those which are severable therefrom.   It is well settled by the clear weight of authority in this country, that houses or other structures of a permanent character erected on the land of another, under an agreement, express or implied, that they are to remain the personal property of the builder, do not attach to and become annexed to the realty.   *Prince v. Case*, 10 Conn., 375.   *Curtis v. Hoyt,*

19 Id., 154. *Smith v. Benson*, 1 Hill, 176. *Doty v. Gorham*, 5 Pick., 487. *Dame v. Dame*, 38 N. H., 429. *Goff v. O'Connor*, 16 Ill., 421. *Fuller v. Tabor*, 39 Me., 519. *White's Appeal*, 10 Barr., 252. *Coleman v. Lewis*, 3 Pa. St., 291. 2 Am. L. C., 288. And the builder may remove the property at the expiration of his agreement. In the absence of any agreement, express or implied, or evidence of intention, everything which is annexed to the freehold becomes a part of the realty, and cannot be severed from it and reinvested with the character of personal property except by the owner of the land. *Reid v. Keith*, 12 Rich., 54. *Powell v. The M. Man. Co.*, 3, Mason, 459. *Stillman v. Hamer*, 7 How. (Miss.), 421. *Winslow v. Merchants Ins. Co.*, 4 Met., 306. *King v. Johnson*, 7 Gray, 239. *Voorheis v. Freeman*, 2 W. & S., 116. *McIntosh v. Trotter*, 3 M. & W., 134. Hence the maxim *Quicquid plantator solo solo cedit.* This presumption, however, may be rebutted by proof of the manner of the annexation, or the circumstances attending it.

In the case at bar, the plaintiff appears to have entered upon the land in question, claiming as owner thereof. He had remained in possession for so long a period that he could not be evicted by proceedings under the act for forcible entry and detention of real property. The rule therefore as to fixtures would be the same as between vendor and vendee, as the rule is the same between the owner and purchaser at an execution sale, or between vendor and purchaser. *Farrar v. Chauffetete*, 5 Denio, 527. In a sale of this real estate, upon execution, would the buildings pass with the land ? And there can be no doubt but they would. They could not, therefore, be treated as personal property. But even if the buildings had been personal property the most that the treasurer could have done would have been to have sold them where

they stood.   The buildings could not be separated by him from the possession of the premises and sold.  He had no authority whatever to remove the buildings before selling them, and he was a trespasser in doing so.   But, so far as this record discloses, this house was not personal property, and could not be sold in the manner attempted in this case.   It is not the policy of the law to separate houses occupied by families from the realty, and treat said houses as personal property for the purpose of collecting taxes, simply because they are not placed upon a brick or rock foundation.  Such houses, where it is evident that they are intended as permanent annexations to the freehold, become a part of the realty, and pass with a conveyance of it, and that, too, without regard to the character of the founda- tions.   It is evident in this case that the real object was not to collect the delinquent tax, but to obtain possession of the premises.   No attempt was made to sell the furniture or other movable property of the plaintiff for the purpose of collecting such tax, but the house, as soon as it was levied upon, was moved upon the street before being sold, apparently for the purpose of giving the county possession of the block. It may fairly be questioned whether Gage county has any title to the block in question.   A dedication was made by the town authorities for a particular purpose, but, so far as appears, the county has not applied it to that purpose.   That a dedication can be made by parol there is doubt, but it certainly is necessary in some way to prove an acceptance on the part of the public. But the question of title cannot be tried in this action ; the plaintiff was peaceably in possession of the prem- ises, and could not be divested of such possession in the manner attempted in this case.   The act passed by the legislature in 1873, Special Laws 1873, p. 63,

could not affect vested rights, and does not appear to have any application to this case.

· The judgment of the district court is reversed, and the case remanded for further proceedings.

REVERSED AND REMANDED.