SARAH A. DIMICK, APPELLANT, V. GRAND ISLAND BANKING COMPANY, APPELLEE, ET AL.

FILED JUNE 30, 1893. No. 5117.

1. **Land Contracts:** MORTGAGES: SALE: ASSIGNMENT: FORE-CLOSURE: EQUITY. In 1881 one N. purchased from the U. P. Ry. Co. a certain tract of land on credit. This land was sold to various persons prior to 1887. In that year, the contracts being the property of one S., he mortgaged the same for a large amount to one D. He also conveyed the land to the G. I. Bank, and soon afterwards assigned the contracts to the bank. D. began an action to foreclose the mortgage in his favor and made the bank a party. After the answer of the bank was filed, the bank, at D.'s request, paid $212 to the U. P. Ry. Co., then due on the land contracts. No claim was made for this in the foreclosure proceedings. In an action by the devisee of D. to have the bank deliver up the contracts and quiet the plaintiff's title in the land, *held*, that the bank was entitled to $212 and interest thereon, and a decree of foreclosure to that effect was right.

2. **Mortgage Foreclosure:** EQUITY: LIENS: PLEADING. The provision of the Code, that the plaintiff shall state in his petition whether any proceedings had been had at law for the recovery of the debt, or any part thereof, applies alone to formal mortgages, and not to mortgages or liens arising out of the equities between the parties.

APPEAL from the district court of Hamilton county. Heard below before BATES, J.

*E. J. Hainer* and *E. L. King,* for appellant.

*Abbott & Caldwell, contra.*

MAXWELL, CH. J.

This is an action to quiet title to real estate. On the trial of the cause in the court below judgment was rendered in favor of the banking company, from which the plaintiff appeals. The facts are correctly stated in the appellant's brief and the statement will be taken from that.

"The pleadings show that on February 11, 1881, the Union Pacific Railway Company sold to Christian Needham the north half of the northwest quarter section 19, township 13, range 5, in Hamilton county, Nebraska, on its usual terms: one-tenth cash, balance on ten yearly deferred payments, and as evidence of the sale and its terms made and delivered to the purchaser its sale contracts numbers 46,868–9 in the form usually employed by it. These contracts were assigned by Needham to one Putnam, and by Putnam to John W. Smith, mentioned in the pleadings. On August 27, 1885, Smith and wife mortgaged these lands, with other tracts, to Chauncey S. Dimick for a large amount. The mortgage was immediately and properly recorded. Thereafter, on October 6, 1885, Smith and wife conveyed the same premises by quitclaim deed to the defendant banking company, which deed was also duly recorded. Three days later, October 9, 1885, Smith and wife assigned and delivered said Union Pacific railway contracts of sale to the banking company. This assignment was approved by the railway company on October 14, 1885, and the bank has ever since retained possession of the contracts.

"It is admitted in its answer that the banking company

had actual knowledge of the Dimick mortgage and that its rights under the deed and assignment were subsequent to the Dimick mortgage. After the maturity of his mortgage Dimick commenced foreclosure in the Hamilton county district court, making the banking company defendant. This cause was removed to the federal court and was consolidated with other foreclosure cases affecting the same property. Under date November 23, 1886, all the parties to these consolidated cases, including Dimick and the banking company, entered into a stipulation declaring the amounts due each, fixing their respective priorities and rights, and for a foreclosure of their several liens. On this stipulation decree was rendered in the federal court on April 11, 1887. A copy of this stipulation, and also of the decree rendered thereunder, is attached to plaintiff's petition and were introduced in evidence.

"Paragraph 2 of the stipulation declares the amount due Chauncey S. Dimick on his mortgage to be $3,771.45, with ten per cent interest from November 8, 1886.

"Paragraph 3 provides that Chauncey S. Dimick has a first and best lien on the land above described, and being the property in dispute in this action, and that he has subsequent liens on other tracts described in the stipulation.

"Paragraph 10 is in the following language: 'That any surplus that may arise after the satisfaction of the liens above stated, with the costs, shall be paid into court to await its further order in the premises, and that the Grand Island Banking Company shall have the right to redeem all and any of several said tracts or parcels of land from this decree or from any sale thereunder at any time prior to the confirmation of such sale upon payment of the amounts hereinbefore declared to be a lien thereon with its *pro rata* share of the costs, said costs to be apportioned proportionally to the amount of the liens on the several tracts hereinbefore described.'

"The decree follows the stipulation. It declares that

'Grand Island Banking Company is the present owner of the equity of redemption' in and to all the lands mentioned, and contains the usual provisions of such decrees, among them being that the Grand Island Banking Company 'being forever barred and foreclosed of all equity of redemption and claim in and to the premises.' The banking company did not in that case set up or claim anything for the $212. Under this decree the sale was had on June 6, 1889, and the land in question sold to Chauncey S. Dimick, mortgagee, for $800. On June 10, 1889, this sale was confirmed by the court, and on the same date deed was made thereunder to Chauncey S. Dimick by the special master in chancery making the sale.

"Pending these proceedings, on November 30, 1886, being seven days after the date of the stipulation to which reference has been made, but more than four months before the date of the decree, and more than two years and a half before the sale and confirmation, the bank paid on these contracts to the Union Pacific Railway Company, $212, being delinquent payments and interest due thereon. Immediately after receiving his deed from the master in chancery, Chauncey S. Dimick entered into possession of the premises, and soon thereafter died, leaving a will whereby he devised to his widow, the plaintiff, the land in question. She made the remaining payments to the railway company, and when the last payment became due, tendered the sum and demanded the deed. The railway company insisted upon a surrender of the contracts before making a deed, and the bank refused to deliver the contracts except upon payment of the $212 paid by it on the contracts, insisting that while the assignments of the contracts upon their face were absolute, yet it took them as security for a large sum of money due it from Smith at the time the assignments were made and it made such payments at the request of plaintiff's testator; that it did this to protect its security, and that the payment was necessary

to protect the interest of Chauncey S. Dimick as well as of the bank. That the claim of the railway company was prior to the claim either of Chauncey S. Dimick or the bank, and that by making the payment the bank became subrogated to the claim of the railway company and has a lien on the contracts and on the land for its repayment. The railway company was not a party to the foreclosure proceedings and the bank did not set up its payment, nor any claim based thereon by way of supplemental pleadings or otherwise, but suffered a decree to be taken, the sale to be had, confirmation made, and deed issued without taking any steps whatever to protect or recover the payment so made by it. In its answer the bank makes no reference whatever to the deed made it by Smith and wife. It offers no explanation of the deed having been made or recorded, neither does the bank make any averment or showing, either by pleading or proof, that anything remains due it from Smith, nor does the answer allege any breach of the alleged implied contract to repay the $212 paid by it on the contracts; nor yet does it allege that no proceedings have been had at law to recover the amount due.

"This suit was brought by plaintiff, as devisee of Chauncey S. Dimick, to compel the bank to surrender the contract, and the railway company to make deed to her for the lands in question. The railway company, by their answer and stipulation filed in the case, offer to make a deed to the party adjudged by the court to be entitled thereto. The district court adjudged that the bank had a lien on the contracts to the land in question for said sum of $212 with interest, and gave a decree of foreclosure for the same."

It will be observed that payments were made by the bank at the request of Dimick, the mortgagee. Unless such payments had been made by some one the contracts would have been subject to forfeiture, and if forfeited the entire security of the mortgagee would have been lost. The payment of this money was an independent transaction and, so

far as appears, entirely disconnected with the mortgage in that case.   The bank held the contracts, which were duly assigned to it as security, and were also security in favor of Dimick.   He became the purchaser under the decree of foreclosure.   The $212 in question was one of the payments for the land.   The plaintiff, as devisee of Dimick, seeks to have the lien of the bank canceled without making payment of the same.   It is a fundamental rule of equity that he who seeks equity must do equity, and that rule applies in this case.   In order to divest the lien of the bank on the premises the plaintiff must pay the amount due thereon.

Objection is made that the defendant's answer does not allege that no proceedings have been had at law for the recovery of the debt or any part thereof.   This provision of our statute is intended for formal mortgages and not for liens arising out of the equities between the parties.   Thus at common law the mortgagee, after default, could maintain ejectment to recover the possession, an action on the note, and to foreclose the mortgage, all at the same time.   The hardship and expense to the mortgagor were very burdensome, and not unfrequently stripped him of all his property.   To avoid these the statute in question was passed. But ejectment cannot be had in favor of the mortgagee in any case, nor on an equitable lien to recover the possession. Neither can an action at law, as a rule, be maintained to enforce the claim which usually can be enforced only in equity.   There is no error in the record and the judgment is

AFFIRMED.

THE other judges concur.