BANKERS LIFE INSURANCE COMPANY, APPELLEE, V. MINNA OHRT ET AL., APPELLANTS: ROSA OFT ET AL., APPELLEES.

FILED DECEMBER 23, 1936. No. 29767.

*Robins & Yost,* for appellants.

*C. Petrus Peterson, William C. Ramsey, Sherman Welpton, Jr., Amos E. Henely, T. F. Henely* and *John A. McKenzie, contra.*

Heard before. GOSS, C. J., GOOD, EBERLY, DAY and CARTER, JJ., and MESSMORE, District Judge.

GOSS, C. J.

Defendants Minna Ohrt, George Ohrt, Eggert J. Ohrt and Nancy Ohrt appeal from a decree of foreclosure.

Plaintiff foreclosed a mortgage on land owned and mortgaged to it by Minna Ohrt and husband, George Ohrt. Minna Ohrt had originally acquired this land from her father and mother, Eggert Oft and Rosa Oft, by warranty deed dated February 8, 1919, which contained the following covenant or condition:

"Subject· to the following stipulation: Grantee herein agrees to pay to the grantors, so long as either one may live, $500 on the first day of September each and every year, this being a part of the consideration for the purchase of said land."

Eggert Oft had died on March 1, 1931. So when plaintiff took the note and mortgage it required Rosa Oft to join the Ohrts in their execution.

Rosa Oft cross-petitioned to preserve her lien upon the land subject only to plaintiff's prior mortgage lien, which she conceded to be such.

Bank of Bennington set up a note and mortgage subject to plaintiff's mortgage but not conceding that it was subject to Rosa Oft's claim.

Minna Ohrt and George Ohrt pleaded that, when the deed to this land was made in favor of Minna Ohrt by the Ofts on February 8, 1919, it was really made in consideration of services of their daughter Minna to her father and mother for a series of years from 1896 to 1901; and that at the time of the transfer it was orally agreed by the Ofts and their daughter Minna that the payment of the $500 each year, starting September 1, 1919, was conditioned (1) upon the land producing that much each year above the cost of production, and conditioned (2) upon the necessity of the Ofts of that sum for their support and maintenance, and was conditioned further (3) upon the oral agreement that, in case of such necessity, the Ofts would require each of the children (three others of whom had like contracts with their parents) to prorate the necessary sum for the maintenance of their father and mother so that "one would not be required to pay more than the other." The answer of Minna and George Ohrt further pleads an oral agreement made June 19, 1919, with Rosa Oft and her husband, Eggert, in which it was agreed by the Ofts, as owners of certain lots improved by a two-story building, that if Minna and her three sisters, with their husbands, would furnish the money to improve the building, at an estimated cost of something over $3,000, the said Minna and her sisters should receive one-fourth of the income from said property thereafter and upon the death of their parents should receive the property; that Minna Ohrt and George Ohrt, pursuant to that agreement, paid out as their share of such improvement in 1919 and 1920 a total of $937.38; that, shortly after the daughters improved the premises, the Ofts placed Roy Gordon, husband of Nancy Gordon, their youngest daughter, in charge of the operation of the premises and ever since he has continued to do a large and lucrative business in said property for the Ofts and, since the death of Eggert Oft, for Rosa Oft; that Rosa Oft has

conveyed said property to Nancy Gordon in consideration of one dollar and love and affection; that Minna and George are entitled to an accounting for the profits of said premises from June, 1919, or, in lieu thereof, to the $937.38, with interest from the date of their payments.

Further, the Ohrts alleged that in May, 1920, Minna and her sisters learned that Eggert Oft had become indebted to the Bank of Bennington in excess of $9,000 and orally agreed with the Ofts that each of them would share equally in the payment of that debt of the parent on the condition that their payments would be credited on account of their annual payments on their respective farms at any time it was not convenient for them to make the annual payments; that Minna and her husband contributed $2,554.75 to Eggert Oft on May 22, 1920, which was used to pay the debt to the bank, have made all annual $500 payments in cash on the contract in the deed of February 8, 1919, up to and including all of the 1931 payment and paid $20 on 1932 payment on June 23, 1933, and are entitled to all payments made by them as credits on the balance of the 1932 annual payment and subsequent thereto.

Eggert J. Ohrt and Nancy Ohrt answered that they are tenants from year to year and that they have the right to remove certain property upon termination of their lease, viz.: Lawn-fence, Westinghouse light-plant with wiring and fixtures, galvanized steel grain-bin, one frame hoghouse, two brooder-houses, 160 rods of hog-wire and posts and one Nesbit hot-air furnace.

The decree allowed plaintiff's lien as a first lien; found that the lawn-fence, including steel posts and gates, the Westinghouse light-plant with wiring and fixtures, and the Nesbit hot-air furnace, claimed by Eggert J. Ohrt and Nancy Ohrt, were affixed to and a part of the real estate; that the condition of the deed from Eggert Oft and Rosa Oft to Minna Ohrt created a lien on the land for a $500 charge each year, and Minna Ohrt, by allowing the mortgage to become delinquent, had jeopardized her mother's lien; that the present worth of that lien is $4,055, and Rosa

Oft is entitled to a foreclosure thereof subject to plaintiff's first lien; that the Bank of Bennington is entitled to a lien and foreclosure thereof subject to the preceding named liens; and that the grain-bin, the hog-house, two brooder-houses and 160 rods of hog-wire and posts are the personal property of Eggert J. Ohrt. Decree was entered accordingly.

The first error assigned by the four appellants is that Rosa Oft was released as a joint maker of plaintiff's note and mortgage and that released the other joint makers, but that the court refused to release them. The answer to that is that in the beginning of the trial counsel for plaintiff, in offering his formal evidence, said: "The plaintiff further waives personal liability of the defendant Rosa Oft on its note and mortgage herein sued on." Later the record shows that counsel requested leave to withdraw this waiver. Rosa Oft consented but appellants objected. The court overruled the objections and permitted the withdrawal of the waiver. Appellants offered no further evidence. It is well settled: "The unconditional release of one of several makers of a joint and several promissory note, without the consent of the other makers thereof, operates as a release of all." *Huber Mfg. Co. v. Silvers*, 85 Neb. 760, 124 N. W. 148; *Farmers State Bank v. Baker*, 117 Neb. 29, 219 N. W. 580. But the evidence here does not show an unconditional release of Rosa Oft from the note and mortgage. In the first place, the statement of counsel for plaintiff is not that Rosa Oft is released from all effects of the note and mortgage, but plaintiff merely waives her personal liability; in other words, the evident intent was to waive the right to a personal judgment against her. In the second place, during the trial counsel for plaintiff, with permission of the court, withdrew that statement from the record. There was no jury. The court was in entire control of the trial. If counsel inadvertently or without consideration makes a statement or admission which may or may not be embarrassing or injurious to his client in a trial to a court, we see no legal reason why it may not be withdrawn during the trial

and before the evidence is concluded, at a time when it does not prevent an adverse party from offering any evidence which he might have offered if such a statement had not been made in the record. Defendants were not misled. No consideration for the statement moved from appellants to plaintiff. The court had the right and the discretion to permit plaintiff to withdraw the statement. "Where it is clearly shown that admissions were made improvidently and by mistake, the court, in its discretion, may relieve a client of the consequences of the error." 6 C. J. 650. No prejudicial error resulted here as might have been the case if, for a consideration, counsel for plaintiff had undertaken to release Rosa Oft from her liability.

The remainder of the errors assigned relate chiefly to matters between defendants. The first is that the court erred in finding that the language in the deed constituted a lien on the land. The language of this deed was quoted in the early part of this opinion. This language did not create a technical annuity under the common law as that term "annuity" is technically defined. Such a charge is technically "chargeable only on the person of the grantor" or person who makes the agreement to pay the annuity. 3 C. J. 200. If we use the term annuity as applied to the annual payment agreed to be made by Minna Ohrt to her father and mother annually so long as either of them should live, as expressed in the deed which she accepted from them, then the term annuity is used in a broader sense than the technical one. "The term is used in a broader sense as designating a fixed sum, granted or bequeathed, payable periodically, but not necessarily annually, subject to such specific limitations as to its duration as the grantor or donor may lawfully impose. It may be made a charge on real estate as well as on the person, if such intention is expressed, or if that result follows by operation of law." 3 C. J. 200.

In the present decree, the sum is referred to as a "rent charge" for which the stipulation in the deed created a lien. We do not see any point in distinguishing in favor of

it being an annuity or a rent charge. Whether called by either name, the effect is the same. By putting the stipulation for its payment and the exact time and terms thereof in the deed, all parties thereto engaged to observe it and also gave notice to third parties dealing with the land of the terms of this agreement between the parties to that deed. The parties to the deed and all parties dealing with the title to the land were cognizant of the contract and bound to take notice of its terms.

The contract in the deed does not affect plaintiff's lien because plaintiff's mortgage was made by the Ohrts as owners of the fee and, by joining in the mortgage, Rosa Oft waived any priority of her claim over that mortgage. The controversy here is only between the Bank of Bennington and Rosa Oft and between the Ohrts and Rosa Oft as to whether the latter has a lien for the unpaid balance of her claim against the Ohrts and for the present worth of any future payments to become due upon her claim, based upon her expectancy, on the theory that a sale of the Ohrts' land will divest her of the security.

In a case involving a very similar provision in a deed, this court held: "Where, in a deed conveying real estate, as a part consideration therefor, it is provided that the grantee shall pay to a person therein named $50 per annum for ten years, which payment is assumed by the grantee by the acceptance of the deed, *held*, that the sum so to be paid is, and was intended to be, a charge upon the land, and its payment secured as an equitable lien on such land." *Pinkham v. Pinkham*, 60 Neb. 600, 83 N. W. 837. That decision is unmodified and in full force and effect.

There was a consideration for the contract of Minna Ohrt to pay the $500 each September 1st to her father and mother during life, in that they conveyed this valuable land to her in fee, subject only to that small annual charge. While it did not constitute a mortgage, yet it was contemplated by the form of the contract and the vehicle through which it was expressed that it should be a charge upon the land. It would be contrary to equity to hold that this

charge does not constitute a lien upon the land when the effect of an adverse holding would result immediately in divesting Rosa Oft of the very security that the parties contemplated should stand for the performance of the contract.

Appellants assign error because the trial court refused to receive their evidence as to some other or different contract between them and the Ofts than that expressed in the deed of February 8, 1919. A sufficient answer to this point is that the court excluded the oral testimony as to another contract or as to a modification of the contract between the Ofts and these defendants because the testimony undertook to prove conversations in June, 1919, and the statute of limitations had barred the claim. This applies to the claims of the Ohrts that they are entitled to credit for $937.38, as their payment to improve the two-story building, and that they are entitled to credit for $2,554.75 as their payment to the Bank of Bennington on account of the payment of their share of Eggert Oft's debt to that bank.

Error is assigned because Rosa Oft did not plead nor prove that no proceedings at law had been had to recover against the Ohrts. "The provision of the Code, that the plaintiff shall state in his petition whether any proceedings had been had at law for the recovery of the debt, or any part thereof, applies alone to formal mortgages, and not to mortgages or liens arising out of the equities between the parties." *Dimick v. Grand Island Banking Co.*, 37 Neb. 394, 55 N. W. 1066.

The last assignment of error is that the court erred in finding that the lawn-fence, light-plant and hot-air furnace are a part of the real estate. The evidence shows that the heating-plant and the light-plant were both built into the house when it was erected in 1927. They were there when the mortgage was made in 1931 and were not excepted in any way. They are naturally adapted to the use of the house as a conventional part thereof and annexed to the realty. To remove the respective plants in their entirety would injure the free-hold. The lawn-fence was also erected

in 1927. The posts are iron and the corner posts are set in concrete in the ground.

"Ordinarily the requisites of a fixture are: (1) Actual annexation to the realty, or something appurtenant thereto; (2) appropriation to the use or purpose of that part of the realty with which it is connected; (3) the intention of the one making the annexation to make the article a permanent accession to the freehold—this intention being gathered from the nature of the articles affixed, the relation and situation of the person making the same, the structure and mode of annexation, and the purpose or use for which it has been made. *Freeman v. Lynch,* 8 Neb. 192, followed." *Oliver v. Lansing,* 59 Neb. 219, 80 N. W. 829.

The judgment of the district court is

AFFIRMED.