T-V TRANSMISSION, INC., A NEBRASKA CORPORATION, DOING BUSINESS AS CABLEVISION, APPELLANT, V. COUNTY BOARD OF EQUALIZATION OF PAWNEE COUNTY, NEBRASKA, AND PAWNEE COUNTY, APPELLEES.

338 N.W.2d 752

Filed September 30, 1983. No. 82-530.

Charles D. Humble of Ginsburg, Rosenberg, Ginsburg, Cathcart, Curry & Gordon, for appellant.

L. Joe Stehlik, Pawnee County Attorney, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ., and GRANT, D.J.

HASTINGS, J.

The plaintiff, T-V Transmission, Inc., has appealed from an order of the District Court which had affirmed the action of the defendant County Board of Equalization of Pawnee County. That board assessed "station connects," or aerial housedrops, as personal property belonging to the plaintiff rather than as fixtures attached to the real estate of each individual homeowner subscriber. Such action on the part of the District Court constitutes the sole assignment of error on the part of the plaintiff.

The plaintiff is engaged in the business of furnishing cable television service to various subscribers in Pawnee County. A power antenna, or head end, is installed out of the noise area of a community, where television signals are then sent through a channel processor, fed into a single cable, and brought into a community by attaching it to existing utility poles or underground cables, which then run by every house in town. This constitutes the television service distribution line or system. The television signal itself is then brought into each house,

where the occupants subscribe to the service, by means of an aerial drop. This is simply a cable with a support wire which runs from the utility pole to the house, where it is attached by means of a house hook. This cable then runs through a grounding block which is attached to a cold water pipe.

The interior cable runs from the grounding block, through the walls of the house, to a wall plate outlet and then is attached to the television set. These interior cables may be strung through an existing house or, upon request of the homeowner, may be built into the walls at the time of initial construction.

Cable service to a particular house is installed and furnished only at the specific request of each individual subscriber. If the subscriber requests that the service be discontinued, a terminator is placed on the aerial drop at the utility pole end, but this lead-in drop and the interior cables are not removed. The former subscriber, if he so desires, may use the materials as a part of his own television antenna system.

The plaintiff has no agreement with its subscribers which would prevent the subscribers' use of these materials, and the plaintiff makes no claim on these cables nor seeks to recover or retrieve them when there has been a disconnection of the service. The plaintiff has no easement across the yards of subscribers to install or remove the cables, and, as a matter of fact, according to the plaintiff's witness, the "station connects," or housedrops, have very little salvage value and are really abandoned by the company. The hope of the plaintiff is, of course, that when a different person occupies that house he will request a reconnection of the service.

Although the subscriber apparently is not billed specifically for the cost of cable installation, the plaintiff does make a trip charge every time it is requested to come on the premises of the homeowner, whether the reason is to make an original installation of the system or to add to or subtract from the

service. In addition, a monthly service charge is made, depending upon the type of service that is furnished.

The basic question involved in this appeal may be quite simply stated to be, Are the "station connects," or aerial drops, together with the enclosed cables, personal property which remain in the ownership of the plaintiff, or are they fixtures affixed to and which become a part of the real estate? The answer would appear to be deceptively simple: " 'In determining this question, the following tests, while not all inclusive, have received general approval, viz.: "1st. Actual annexation to the realty, or something appurtenant thereto. 2d. Appropriation to the use or purpose of that part of the realty with which it is connected. 3d. The intention of the party making the annexation to make the article a permanent accession to the freehold. This intention being inferred from the nature of the articles affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made." Freeman v. Lynch, 8 Neb. 192; Frost v. Schinkel, 121 Neb. 784. The third test, namely that of "intention," appears by the clear weight of modern authority to be the controlling consideration.' " Cook v. Beermann, 201 Neb. 675, 679, 271 N.W.2d 459, 462 (1978).

Research discloses but three reported decisions similar in nature to the instant case, all of which recognized the three-prong test of Cook v. Beermann, supra: Tele-Vue Systems, Inc. v. County of Contra Costa, 25 Cal. App. 3d 340, 101 Cal. Rptr. 789 (1972); Bylund v. Depart. of Rev., 9 Or. T.R. 76 (1981); and Hoppe, King County Assessor, v. Tele-vue Systems, Inc., Nos. 13386-13390, Board of Tax Appeals, State of Washington, decided July 20, 1976. The latter two administrative agencies ruled that the entire system, from the utility pole to the television set, was a fixture. In the case decided by the

California court, both parties stipulated that the cable from the utility pole to the house was to be treated as personal property belonging to the television company, but the court ruled that the remainder of the system, contrary to the contention of the taxing authority, became a fixture and was a part of the real estate.

We believe that there is little doubt that the entire system, from the utility pole inward, was annexed to the realty and was appropriated solely for the use of the occupants of that realty.

As to the remaining question, concerning the intention of the party making the annexation, we have both the testimony and the practice of the plaintiff that it had no right or intention of removing the property, and in fact had not done so, but had abandoned, in favor of the homeowner, all claim to the property that it might otherwise have had.

The judgment of the District Court is reversed and the cause remanded with directions to enter a judgment in conformity with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.

KRIVOSHA, C.J., not participating.