FUEL EXPLORATION, INC., A CORPORATION, APPELLEE AND CROSS-APPELLANT, V. RICHARD M. NOVOTNY AND CAROLINE E. NOVOTNY, HUSBAND AND WIFE, APPELLANTS AND CROSS-APPELLEES, MMS ENERGY INVESTMENT GROUP I, INC., ET AL., INTERVENORS-APPELLEES AND CROSS-APPELLANTS.
374 N.W.2d 838

Filed October 11, 1985. No. 84-433.

George P. Burke of Van Steenberg, Myers & Burke, for appellants.

Robert G. Simmons, Jr., of Wright, Simmons & Selzer, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

The appellee corporation, Fuel Exploration, Inc., brought a replevin action against the appellants, Richard M. and Caroline E. Novotny, husband and wife, seeking possession of certain oilfield equipment which Fuel Exploration alleged it owned. The trial court entered a replevin order, after which Fuel Exploration took possession. Following an allegation in the Novotnys' amended answer that there were in existence others who had an interest in the equipment, a group of "working interest owners" intervened and alleged that they became owners of the equipment after the order of replevin was issued, and joined in Fuel Exploration's prayer that possession be given to it. At trial the court determined as a matter of law that Fuel Exploration did not own the equipment at the commencement of the action as it had alleged but had "at best" a security interest in it and that the Novotnys, therefore, had the right to possess the equipment as of that time. The trial court also determined as a matter of law that the equipment constituted trade fixtures and instructed the jury that it was to determine ultimate ownership and whether Fuel Exploration and the working interest owners had the right to remove the equipment from the Novotny land. The jury returned a general verdict in favor of Fuel Exploration and the working interest owners. The trial court then, pursuant to a waiver of the jury on the issue of damages, awarded the Novotnys $1 in nominal damages for their temporary loss of possession. The Novotnys have appealed and by their six assignments of error raise three issues: (1) Whether the Novotnys owned the equipment; (2) Whether they were entitled to more than nominal damages; and (3) Whether the working interest owners should have been permitted to intervene. In their cross-appeal Fuel Exploration and the working interest owners urge that the trial court erred in holding as a matter of law that they were not the owners of the equipment at the commencement of this action. We affirm in part and reverse in part.

To the extent the trial court resolved questions upon motions

for directed verdicts, we review the evidence in light of the rule that upon such a motion the moving party is deemed to have admitted as true all the relevant evidence received which is favorable to the party against whom the motion is directed and, further, that the party against whom the motion is directed is entitled to the benefit of all proper inferences which can reasonably be deduced from such evidence. *Quad-States, Inc. v. Vande Mheen*, 220 Neb. 161, 368 N.W.2d 795 (1985).

So reviewed, the evidence establishes that the Novotnys are the record title owners of the west half of a certain Section 7 in Kimball County. They also claim ownership, but are not the record title owners, of a portion of Section 18 adjoining the southern boundary of their half of Section 7.

Through a series of transactions which are not relevant to the present case, Fuel Exploration, as "operator," joined a number of others known as "working interest owners" or "nonoperators" in a project to complete the drilling of and to operate an oil well on the east half of Section 7, land owned by a Mrs. Spiker but farmed by the Novotnys along with their half of Section 7 and the aforesaid portion of Section 18.

An operating agreement was executed between the working interest owners and Fuel Exploration, obligating the latter to operate the well after its completion and to procure the necessary equipment for so doing. The agreement states: "[A]ll equipment and material acquired in operations on the Contract Area shall be owned by the parties as their interests are shown in Exhibit 'A'." Although we do not find an exhibit so designated in the record, the evidence establishes the identity and proportionate interests of the working interest owners. The agreement obligates the working interest owners to pay a proportionate share of the cost of the equipment within 15 days of billing by Fuel Exploration. The record establishes that at least some of the working interest owners had paid their proportionate share of the cost of the equipment. The agreement also provides:

> Each Non-Operator [working interest owner] grants to Operator [Fuel Exploration] a lien upon its oil and gas rights in the Contract Area [defined elsewhere in the agreement as being all of Section 7 and a portion of

Section 8], and a security interest in its share of oil and/or gas when extracted and its interest in all equipment, to secure payment of its share of expense, together with interest thereon at the rate provided . . . .

Pursuant to the provisions of the operating agreement, Fuel Exploration procured the equipment in dispute, which consists of two oil storage tanks, a treater used to separate water from the oil, a pump, and various accessories and connecting flow lines.

In the mistaken belief it was placing the equipment on Mrs. Spiker's land, Fuel Exploration in fact placed all of the equipment on land owned or claimed by the Novotnys, some of it on the Novotnys' half of Section 7 and some of it on Section 18. The tanks were put on but not secured to a pair of pads consisting of several yards of gravel leveled and packed to provide drainage. The treater, which is approximately 10 feet in diameter and stands 20 feet tall, was bolted to a portable concrete block approximately 12 to 15 inches thick and 6 to 8 feet square. The tanks were connected to the well with underground lines buried 4 feet deep, and there were flow lines from the tanks to the treater, as well as a gasline from the well to the treater. A treater house approximately 12 by 15 feet was also set against the treater to protect some valves.

After the Novotnys discovered the error, Fuel Exploration attempted to buy the land on which the equipment sat. The Novotnys, however, did not wish to sell. Negotiations for Fuel Exploration to lease the land on which the equipment was placed fell through. Thereafter, knowing that the equipment was removable, Mr. Novotny erected a temporary fence around the equipment area, posted no trespassing signs, maintained a 24-hour guard on the property, and notified Fuel Exploration that it was not licensed to enter upon his land, warning it not to trespass nor to remove any of the equipment.

Fuel Exploration then filed this suit. Following the hearing required by Neb. Rev. Stat. § 25-1093.02 (Reissue 1979), the trial court found that Fuel Exploration was entitled to possession of the equipment and ordered its delivery to Fuel Exploration pursuant to Neb. Rev. Stat. § 25-1093.04 (Reissue 1979).

Fuel Exploration then took possession and removed the equipment to Mrs. Spiker's land. It took no more than 2 days to do that, as the equipment, save for the buried lines, was designed so it could be picked up by a medium-sized crane and hauled from site to site as wells go dry. After the equipment was removed the Novotny land was leveled and returned to an appearance closely resembling its original state. The underground lines, however, were left in place.

After Fuel Exploration obtained the replevin order, the Novotnys alleged that there were others interested in the equipment who were not parties to the action. As a consequence, the working interest owners were permitted to join Fuel Exploration's suit. Both the working interest owners and Fuel Exploration pled that no title interest passed to the working interest owners until the equipment had been placed on the Spiker land.

At the jury trial both sides moved for directed verdicts at the close of all the evidence, whereupon the trial court made the rulings stated in the first paragraph of this opinion.

The Novotnys contend, in connection with the first issue raised by their assignments of error, that they owned the equipment and that the trial court erred in not so ruling. They claim the equipment had become fixtures annexed to their land and could not be removed except by them.

The term "fixture" refers to a chattel which is capable of existing separate and apart from realty, *Frost v. Schinkel*, 121 Neb. 784, 238 N.W. 659 (1931), but which, by actual annexation and appropriation to the use or purpose of the realty with the intention of making it a permanent accession thereto, becomes a part of the realty. See, *T-V Transmission v. County Bd. of Equal.*, 215 Neb. 363, 338 N.W.2d 752 (1983); *Cook v. Beermann*, 201 Neb. 675, 271 N.W.2d 459 (1978), *modified on other grounds* 202 Neb. 447, 276 N.W.2d 84 (1979); *Bankers Life Ins. Co. v. Ohrt*, 131 Neb. 858, 270 N.W. 497 (1936); *Frost v. Schinkel, supra*. Once a chattel becomes a fixture, it is treated as a part of the realty and may not be removed therefrom except by the owner of the realty. See, *T-V Transmission v. County Bd. of Equal., supra*; *Bankers Life Ins. Co. v. Ohrt, supra*; 35 Am. Jur. 2d *Fixtures* § 2 (1967).

A "trade fixture," unlike a "fixture," however, is not considered part of the realty and may be removed from the realty by the trade fixture's owner, so long as the removal does not cause substantial damage to the realty. See, *Bishop Buffets, Inc. v. Westroads, Inc.*, 202 Neb 171, 274 N.W.2d 530 (1979); *Rothery v. Dohrse*, 122 Neb. 259, 240 N.W. 296 (1932); *Frost v. Schinkel, supra*; 35 Am. Jur. 2d *Fixtures* § 3 (1967).

Whether articles constructed upon realty owned by another become annexed to and part of the realty depends to a great extent upon the facts and circumstances of the particular case. *Waters v. Reuber*, 16 Neb. 99, 19 N.W. 687 (1884). The intention of the party making the annexation is to be inferred from the nature of the articles affixed, the relation between the parties, the situation of the party making the annexation, the nature of the structure, the mode of annexation, and the purpose or use for which the annexation has been made. See, *T-V Transmission v. County Bd. of Equal., supra*; *Cook v. Beermann, supra*.

Given the movable character of the equipment and the fact that it was placed where it was by mistake, we must conclude as a matter of law the equipment never lost its character as chattels and became neither fixtures nor trade fixtures. Since the placement of the equipment was not permanent in nature, the case falls outside the general rule that in the absence of statute any permanent improvement placed upon land of another by one having no interest or title in the land, without the landowner's consent, prima facie becomes a part of the realty and belongs to the owner of the land, although it was placed thereon by mistake or with a view of enforcing an adverse right in the land, unless there is an express agreement which takes the case out of the rule, or unless the owner is estopped to claim such ownership. See *In re Estate of Carlson*, 214 Neb. 453, 334 N.W.2d 437 (1983).

In view of the fact that the Novotnys have no proprietary interest in the equipment whatsoever, it seems appropriate at this point in this unnecessarily convoluted case that we turn our attention to the cross-appeal of Fuel Exploration and the working interest owners.

The record establishes that the working interest owners are

"the people that pay the bills" and who, according to the operating agreement referred to above, "own" the equipment and did so at the time of the commencement of this action by Fuel Exploration.

The Novotnys, however, in effect argue that the true ownership of the equipment avails Fuel Exploration and the working interest owners nothing. In doing so they rely on the rule that in a replevin action the burden is on the plaintiff to show the facts necessary to recover existed at the time the action was commenced; what takes place thereafter is immaterial in the consideration and determination of the merits of the case. *State Farm Mutual Auto. Ins. Co. v. Drawbaugh*, 159 Neb. 149, 65 N.W.2d 542 (1954), *overruled in part on other grounds, First Nat. Bank & Trust Co. v. Ohio Cas. Ins. Co.*, 196 Neb. 595, 244 N.W.2d 209 (1976); *Bank of Keystone v. Kayton*, 155 Neb. 79, 50 N.W.2d 511 (1951); *Alliance Loan & Investment Co. v. Morgan*, 154 Neb. 745, 49 N.W.2d 593 (1951); Neb. Rev. Stat. § 25-10,103 (Reissue 1979). Moreover, they correctly argue, citing *State Farm Mutual Auto. Ins. Co. v. Drawbaugh, supra*, that the plaintiff must prove title as he or she pleads it and that an allegation of general ownership is not supported by proof of special ownership.

It is to be noted, however, that *State Farm* applied that rule as between two claimants, each of whom had a colorable interest in the property at the time the replevin action was commenced; the plaintiff because it had paid for an insured loss, and the defendant because he had acquired a certificate of title. Here, the Novotnys, as we have seen, have no proprietary interest in the equipment at all. (The rule is also found in *Griffing v. Curtis*, 50 Neb. 334, 69 N.W. 968 (1897), and in *Robinson v. Kilpatrick-Koch Dry Goods Co.*, 50 Neb. 795, 70 N.W. 378 (1897). It appears, however, that in *Griffing* the action failed because insufficient facts to support the claim of special ownership were pled. In *Robinson*, as in *State Farm*, it appears each of the claimants had a colorable interest in the property.) The evidence in this case is sufficient to support the allegation of ownership made by Fuel Exploration and the working interest owners.

Therefore, the trial court should have determined as a matter

of law that Fuel Exploration and the working interest owners owned the equipment as of the date the action was commenced and were entitled to possession as of that date.

In view of the jury's verdict, however, the trial court's errors in those regards are not prejudicial and form no basis for reversal. *Wausau Ins. Co. v. Schake*, 220 Neb. 802, 373 N.W.2d 669 (1985); *Fleming Realty & Ins., Inc. v. Evans*, 199 Neb. 440, 259 N.W.2d 604 (1977).

The foregoing resolution disposes of the second issue raised by the Novotnys' assignments of error adversely to them; having no proprietary interest of any kind in the equipment, they are entitled to no damages. Accordingly, the $1 judgment in favor of the Novotnys must be and is reversed.

The third issue raised by the Novotnys' assignments of error must also be rejected. If there was error in permitting the working interest owners to intervene, a matter we do not decide, it was prompted by the Novotnys' own allegation that there were others interested in the equipment who were not parties to the action. A party cannot be heard to complain of error which he or she was instrumental in bringing about. *Bohaty v. Briard*, 219 Neb. 42, 361 N.W.2d 502 (1985); *Kluender v. Mattea*, 214 Neb. 327, 334 N.W.2d 416 (1983).

AFFIRMED IN PART, AND IN PART REVERSED.

KRIVOSHA, C.J., concurs in the result.

CAPORALE, J., dissenting.

I agree that the Novotnys are in no position to complain of the working interest owners' intervention in this case. I also agree that the working interest owners are and were the owners of the equipment when Fuel Exploration commenced this replevin action and that Fuel Exploration was and is not. I further agree that the equipment never lost its character as chattels and that the Novotnys therefore never acquired therein any interest whatsoever.

Yet, I dissent because I consider the result reached, although perhaps "fair" in the sense that it allows the owners to recover possession from those who have absolutely no interest in the equipment, to be legally incorrect.

The majority opinion ignores a basic principle of the law of replevin, that the plaintiff must recover on the strength of its

own interest in the property involved and not on any weakness in the interest of the defendant. *Putnam Ranches, Inc. v. Corkle*, 189 Neb. 533, 203 N.W.2d 502 (1973); *Bank of Keystone v. Kayton*, 155 Neb. 79, 50 N.W.2d 511 (1951). When that rule is applied, together with those cited by the majority, that the right to recover is dependent upon the facts as they existed at the time the action was commenced, that the plaintiff must prove the interest pled, and that proof of a special ownership interest does not support an allegation of general ownership, the inescapably correct legal conclusion is that because Fuel Exploration pled a general ownership interest rather than the special one it proved to have at the commencement of the action, and because the working interest owners pled they had no ownership interest when in fact the evidence establishes they did have such an interest when the action was commenced, neither Fuel Exploration nor the working interest owners are legally entitled to recover possession of the equipment in this action.

The majority's effort to distinguish this case from *State Farm Mutual Auto. Ins. Co. v. Drawbaugh*, 159 Neb. 149, 65 N.W.2d 542 (1954), *overruled in part on other grounds, First Nat. Bank & Trust Co. v. Ohio Cas. Ins. Co.*, 196 Neb. 595, 244 N.W.2d 209 (1976), and *Robinson v. Kilpatrick-Koch Dry Goods Co.*, 50 Neb. 795, 70 N.W. 378 (1897), fails. The Novotnys' fallacious claim that they had become the owners of the equipment once it was attached to their land is no more colorable or less colorable than the plaintiff's incorrect claim in *State Farm* that it had acquired a paramount interest in the automobile by virtue of having paid for its loss by theft. In like fashion, the Novotnys' claim is no more colorable or less colorable than that of the defendant in error in *Robinson*, which erroneously asserted it had a general ownership by virtue of its rights under chattel mortgages. (I agree that *Griffing v. Curtis*, 50 Neb. 334, 69 N.W. 968 (1897), does not rest on the rule that proof of a special ownership interest does not support an allegation of general ownership.)

Accordingly, I would reverse the judgment of the district court returning possession of the equipment to Fuel Exploration and the working interest owners. Neb. Rev. Stat.

§ 25-10,103 (Reissue 1979). Since the Novotnys had no use for the equipment, I would affirm the award of $1 in nominal damages to them. Neb. Rev. Stat. § 25-10,104(1) (Reissue 1979).

It seems to me that the majority opinion is an aberration which does no more than demonstrate that hard facts make bad law.