TORPY, J.
This is an ad valorem taxation dispute between the Citrus County Property Appraiser and other taxing authorities (hereinafter collectively “Appellant”) and Appel-lee, owner of a cable television franchise, involving the propriety of the assessment of portions of Appellee’s cable system. After trial without a jury, the lower court entered judgment resolving the disputed issues in Appellee’s favor. Appellant raises one issue on appeal, whether the court erred when it determined that “exterior cable drops” are not “tangible personal property” and thus not taxable. Because we conclude that the lower court erred on this point, we reverse that portion of the final judgment.
The facts pertaining to this issue are fairly simple and undisputed. Appellee’s cable system originates at the point where the signal is received. The signal traverses public utility easements, either below ground or on utility poles, via coaxial cable or fiber optic tube. It is then connected to the individual subscribers’ residences by “exterior cable drops,” which are either aerial drops from poles or underground connections.
The parties agree that the transmission lines in the public easements are taxable as the tangible personal property of Appel-lee. The parties also agree that the cables installed inside the subscribers’ residences (the interior portion of the drops), which are not owned, and are frequently not installed, by Appellee, are not taxable to Appellee. The point of disagreement between the parties is how to treat the exterior cable drops.
Appellee admits that it owns the exteri- or cable drops even though they traverse subscribers’ properties. Indeed, Appellee maintains the drops, replaces defective components and retains the right to remove them (albeit not exercised) if service is terminated. Furthermore, Appellee depreciates the cost of each drop on its federal income tax returns. Appellee’s expert valued the drops for all tax years in issue at two million eight hundred twenty three thousand dollars ($2,823,000). Because ownership is not an issue, the only issue to be resolved here is whether the drops are tangible or intangible personal property, the latter being exempt from the ad valo-rem taxation in question.
When authorized by general law, the constitution authorizes the county to levy ad valorem taxes on everything except “intangible personal property.” Art. VII, § 9, Fla. Const. General law permits the taxation of all “tangible personal property which is not immune under the state or federal constitutions from ad valorem taxation, in that county and taxing jurisdiction in which it is physically present on January 1 of each year.... ” § 192.032(2), Fla. Stat. (2001). No argument is advanced by Appellee that it or it’s property has an immunity from taxation. Instead, Appel-lee argues that the cable drops are not tangible property; rather, it urges that the drops should be classified as “make ready.” This argument was accepted by *468 the trial judge who found that the cable drops are “similar to ‘make ready,’ ” and therefore not taxable. We think this argument is fallacious.
“Make ready” is not a defined phrase in the constitution, statutes or decisional law of Florida. The phrase, however, seems to have been adopted in this ease from a July 15, 1993, letter drafted by a technical ad-visor for the Department of Revenue, in which the advisor concluded that “make ready costs” are intangible property and not taxable. In the letter, addressed to the property appraiser of another county, the advisor described “make ready costs” as the costs incurred in moving power lines on utility poles to make room for a cable company’s lines. Because cable companies are required under franchise agreements with local governments to utilize existing utility poles and underground conduits, they must reimburse the utility companies for the utilities’ costs in moving their wires and equipment to make room for the cable lines. The Department’s ad-visor further explained that these make ready costs are:
analogous to transplanting a tree to clear the way for an underground cable line or pipeline, as a part of the cost of the easement. The transplanting of a tree would be part of the cost of the easement. If, later, the old cable or pipe were dug up and new cable or pipe installed, the cost of transplanting the tree would not be incurred a second time.
Using this analogy, the advisor concluded that “make ready costs” are costs incurred in acquiring the license to use the utility easement, and therefore “part of the value of the license agreements.” As such, “make ready costs” are not properly included in the valuation of the cable company’s tangible personal property.
Unlike the trial court, we fail to see the “similarity” between cable drops and “make ready costs,” except that both are expenses incurred by the cable company, a fact common to acquisitions and expenditures of every kind. The points of dissimilarity, however, are numerous. The cable company does not acquire an easement from its individual subscribers. Nor do the individual subscribers have to take any steps in preparation for the cable drop. The drop is nothing more than a physical connection between the cable system and the subscribers’ residences by way of coaxial cable. This connection is no less tangible and no less vital to signal transmission than any other physical part of the system. Without the drops, the system is unable to get the signals to the subscribers. Furthermore, unlike “make ready costs,” if the drop is removed due to deterioration, the cost must be incurred again. “Make ready,” conversely, involves nothing tangible and is not an integral part of a cable company’s signal transmission system. It is simply a one-time cost in “making ready” an easement. We conclude, therefore, that the trial judge erred in determining that cable drops are similar to “make ready” and therefore intangible.
Our conclusion that cable drops are not intangible personalty is supported by the statutory definitions of intangible and tangible personal property:
“Intangible personal property” means money, all evidences of debt owed to the taxpayer, all evidences of ownership in a corporation or other business organization having multiple owners, and all other forms of property where value is based upon that which the property represents rather than its own intrinsic value.
§ 192.001(11)0»), Fla. Stat. (2001).
“Tangible personal property” means all goods, chattels, and other articles of val *469 ue ... capable of manual possession and whose chief value is intrinsic to the article itself.
§ 192.001(ll)(d), Fla. Stat. (2001).
These definitions clearly distinguish intangible property, such as stock certificates, where the item represents something of value, from tangible property, which represents nothing, but which has intrinsic value. Cable drops are clearly tangible. They are a good. Their only value is their intrinsic value. They are capable of manual possession. Conversely, they are not intangible by definition because they are not evidences of debt or ownership, and they do not represent some other property.
In concluding that the exterior cable drops are taxable, we align our court with courts of other jurisdictions that have reached the same conclusion on this issue. See, e.g., Chillicothe Cablevision v. Tax Commissioner of Ohio, 1987 WL 12460 (Ohio Ct.App.1987) (provider liable for taxes on the drops because insufficient evidence presented that provider intended to relinquish ownership of drops to subscriber); Cox Cable of Cedar Rapids, Inc. v. Board of Review of City of Cedar Rapids, 521 N.W.2d 743 (Iowa 1994) (drops were taxable because owned by service provider); Continental Cablevision of Michigan v. City of Roseville, 430 Mich. 727, 425 N.W.2d 53 (1988) (drops taxable because owned by cable company). Although contrary authority exists, even those jurisdictions that have sided with cable companies on this issue have not found the drops to be intangible. Rather, they have based their decisions on factual findings by trial courts that ownership of the drops had been transferred to the customers. See, e.g., Comcast Cablevision of Sterling Heights v. City of Sterling Heights, 218 Mich.App. 8, 553 N.W.2d 627, 629 (1996) (drop not taxable to provider because contract between cable company and owner transferred ownership of drop to customer upon installation). Bylund v. Dept. of Revenue, 9 Or. Tax 76 (Or. T.C.1981) (drops, both aerial and underground, and both exterior and interior, should be treated by the tax assessor as fixtures which belong to the homeowner and which should be taxed as realty rather than personal property); T-V Transmission, Inc. v. County Bd. of Equalization of Pawnee County, 215 Neb. 363, 338 N.W.2d 752 (1983) (cable company upon installation abandoned any claim on the property in question in favor of homeowner). Here, if the trial judge had made a factual finding that Appellee did not own the drops, a different case would have been presented. Given that there was no question here that the cable provider continued to own the exterior portion of the drop, however, we see no basis to conclude that this tangible property is not subject to ad valorem taxation.
We hold, therefore, that the lower court’s conclusion that “exterior cable drops” are not taxable is erroneous and is, therefore, reversed. In all other respects, the decision of the trial court is affirmed. This cause is remanded for further proceedings consistent herewith.
AFFIRMED in part; REVERSED in part and remanded.
PETERSON and THOMPSON, JJ., concur.