ELLA HUXOLL, ADMINISTRATRIX, APPELLEE, v. UNION PACIFIC RAILROAD COMPANY, APPELLANT.

FILED DECEMBER 23, 1915. No. 18377.

1. Appeal: HARMLESS ERROR. Under section 7713, Rev. St. 1913, an error which does not affect the substantial rights of a party will not justify a reversal of a judgment.

2 Master and Servant: INJURY TO SERVANT: DEFENSES. Under the federal employers' liability act contributory negligence is not a complete defense in any case, and assumption of risk is only eliminated as a defense in cases where the "violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." 4 U. S. Comp. St. 1913, sec. 8659, p. 3914.

3. ———: ———: ASSUMPTION OF RISK. An employee assumes the ordinary risks of his employment, but he does not assume the extraordinary risks caused by direct acts of negligence of his employer.

4. ———: ———: NEGLIGENCE. *Glantz v. Chicago, B. & Q. R. Co.*, 90 Neb. 606, followed.

5. ———: ———: ———: CONTRIBUTORY NEGLIGENCE: QUESTION FOR JURY. Plaintiff's intestate was a locomotive engineer in the service of the defendant. He was directed to take an engine stationed

in the yard of defendant at Sidney and proceed to another point on the line for the purpose of bringing in a train used in interstate commerce. A strong north-wind was blowing, the thermometer was 10 to 15 degrees below zero, snow was on the ground and was drifting, and clouds of smoke and steam from the roundhouse and from engines made it almost impossible to see ahead. As deceased was approaching his engine, he went between the rails of the main-line track. A high-tank road engine engaged in switching in the yards, moving backwards, without lookout, warning or signal, at a rate variously estimated at from three to eight miles an hour, at a point where the smoke and steam were so dense that objects one or two feet away could not be seen,, struck and killed the deceased. *Held*, that a finding that the defendant was guilty of actionable negligence is sustained by the evidence, and that the question whether the deceased was guilty of contributory negligence was for the jury.

6. ——: ——: ASSUMPTION OF RISK. A locomotive engineer in walking to his engine in the switching yards of a division station through a cloud of smoke and steam does not assume the risk that his employer will negligently propel an engine backwards through the yards and through dense clouds of smoke and steam without warning of some character either by bell, whistle, light, or lookout.

7. Instructions given and refused, examined, and *held*, that no prejudicial error was committed by the court with respect thereto.

8. Appeal: SPECIAL INTERROGATORIES: DISCRETION OF COURT. It is within the discretion of the court to submit special interrogatories to the jury when requested, and, unless an abuse of such discretion is shown, such a refusal will not be held to be erroneous.

9. Instructions given to the jury will be considered together, and, if the charge taken as a whole properly and fairly submits the issues in the case, a mere technical inaccuracy in one or more will not justify a reversal of the judgment for that reason alone.

APPEAL from the district court for Lancaster county: P. JAMES COSGRAVE, JUDGE. *Affirmed.*

*Edson Rich, A. G. Ellick, E. C. Strode* and *B. W. Scandrett,* for appellant.

*Stout, Rose & Wells, Hoagland & Hoagland* and *Wilmer B. Comstock, contra.*

LETTON, J.

This is an action to recover damages on account of the death of Fred J. Huxoll, the husband of the plaintiff, by

reason of certain alleged acts of negligence on the part of the Union Pacific Railroad Company. Plaintiff, as administrator, recovered judgment for $20,000 for the benefit of herself and children. Defendant appeals.

Huxoll left surviving him his widow and two minor children. At the time of his death he lived at North Platte, and was a locomotive engineer in the service of the defendant, running between North Platte and Sidney. On the morning of January 1, 1911, Huxoll, while at Sidney, was called and ordered to take engine No. 1909, to leave at 11:10 A. M., with another engine and run to Perdue to bring in a freight train. The engine was headed westward and was to run backward to Perdue. At the time of the accident he was proceeding to his engine in response to the call. The train he was to move was being used in interstate commerce. The train order gave these engines a clear track and right of way over all trains on the main line. Sidney is a division station, and defendant maintains there a roundhouse, turntable, water-crane, wash-house and switching yards. Near the water-crane there is what is known as a "spot track" on which engines are stationed after being coaled, watered and made ready to be taken out. The water-crane and "spot track" are some distance south and east of the wash-house. In order to reach the engine it was necessary for Huxoll to cross one or more tracks and to proceed some distance eastward, passing the turntable, with the main-line track to the north. On this morning engines 1913 and 1909 were upon the "spot track," 1913 standing at the water-crane and 1909, Huxoll's engine, farther east. The weather was extremely cold, 10 to 15 degrees below zero, and a strong north or northwest wind was blowing. The roundhouse is situated to the south of a bluff, the elevation of which is from 100 to 200 feet in height. It was snowing, and the ground and tracks were covered with snow about two inches deep when undisturbed by the wind. Clouds of smoke from the roundhouse, steam from the engines and snow from the storm were blowing across the yards, and

in places it was almost impossible to see more than a foot or two. The water-crane stood upon a small platform about 12 feet long from east to west. There was a pit and drain connecting with a sewer in order to carry off the overflow, but, on account of the intense cold, there was more or less ice around and about the platform. Plaintiff's theory of the case, which is supported to some extent by testimony, is that as Huxoll, in going to his engine, approached the crane and platform, in order to avoid walking upon the ice, he stepped around it upon the main-line track. There was a cloud of fog, steam and smoke at that point. Almost instantly he was struck by an engine running backwards to the west, which gave no signals of its approach, and which was running about eight or ten miles an hour. The whistle was not sounded, and the bell was not rung, the machinery to ring the bell automatically was out of order, and the power brake upon this engine was defective. Huxoll was knocked down, was dragged by the ash pan and brake beams a distance of about 75 feet, and the leading end of the engine moved about 150 feet before it was stopped. He was then extricated, but died soon afterwards.

The specific allegations of negligence in the petition, much abridged, are: Negligence of defendant in maintaining the roundhouse in close proximity to the main-line track and to the water-crane and engine tracks, so that the smoke and steam therefrom enveloped and obscured its engines, and obstructed the view of engine and train movements upon the tracks; negligence in permitting an accumulation of ice about the crane, in permitting the crane to become out of order so as to permit the escape of water on the ground, where it froze and rendered the way slippery and dangerous, making it necessary for Huxoll's safety that he make a slight detour in his course and go upon the main-line track; negligence and carelessness in using in switching an ordinary locomotive with high tank, instead of a switch engine with a sloping tank, so as to allow a free and unobstructed view of the track

in either direction, and in failing to station a man on the front end of the engine for the purpose of warning persons upon the track, and it is alleged that "in general and common practice a brakeman or other servant is so stationed for that purpose;" negligence in not providing a foot-board, and in running the engine at a high and dangerous rate of speed, "and not under control." It is also charged by amendment that the power brake on the engine was broken and defective, that the bell was defective and out of repair, and that no warning signals of any kind were given.

The answer, in substance, is a general denial, with a plea of assumption of risk and contributory negligence. An amendment was filed pleading that the acts of negligence set out in the amendment to the petition were not alleged in the original petition and were not charged within two years after such acts are alleged to have occurred.

Defendant assigns 56 errors as ground for the reversal of the judgment. We cannot consider them in detail. Some are complaints of mere technical irregularities of a nature which may and usually do occur in the trial of almost every case where so much testimony was taken. We have passed the day when an error which does not injuriously affect the substantial rights of a party will entitle him to a reversal of the judgment, and it serves no useful purpose for parties to complain of, or for courts to consider and discuss, mere lapses from strict and formal methods of procedure. This applies with most force, perhaps, to assignments of error in rulings upon the admission of evidence. Unless prejudice appears to have resulted from an erroneous ruling of this nature, a judgment will not be reversed upon that ground.

Many assignments of error are made as to the giving and refusal of instructions. The court gave 29 instructions on his own motion. The defendant requested 47. In its charge the court practically eliminated a number of the grounds of negligence charged in the petition. The

only questions left were whether the defendant was guilty of negligence in failing to have a lookout on the leading end of the switch engine; in moving it at an excessive rate of speed under the circumstances and in failing to keep it under control; whether the track was obscured by smoke and steam; whether the death of Huxoll resulted in whole or in part from its negligence; whether the power brake of engine No. 213 was in working order at the time of the accident; and, if not in working order, whether such condition contributed to his death.

The complaint is made that the court should have told the jury that Huxoll was guilty of contributory negligence, as a matter of law, and that each of the instructions tendered by defendant should have been given. The instructions tendered by defendant endeavored to separate into distinct elements each charge of negligence made by plaintiff, and requested a specific direction that each of these charges would not warrant a verdict for the plaintiff. Some of these instructions are so clearly erroneous that they are not worthy of consideration and should never have been requested. Such requests entail needless labor upon trial and reviewing courts. An illustration is No. 2, which asked the court to instruct that Huxoll was not engaged in interstate commerce at the time he received the injuries. The substance of some and the identical language of a number of others were adopted by the court and incorporated as a part of its own instructions.

The gist of the requested instructions is contained in defendant's No. 1, that the jury be directed to find for the defendant. The testimony is so conflicting, not only for the reason that the witnesses differ, but because some of the witnesses for each party told materially different stories at different times, that it is almost impossible for a reviewing court, which cannot see the witnesses, to determine what the true facts are. The verdict of the jury must be taken as settling their credibility.

We will endeavor to notice the assignments in the order followed in defendant's brief, but cannot within the proper limits of an opinion discuss them at length. It is contended that the court should not have submitted to the jury any issue as to the condition of the brakes on engine No. 213. There is a sharp conflict in the testimony with respect to the condition of these brakes. Zimmer, the engineer, testified that about 8 o'clock of that morning he noticed that the air was not working properly, and he found upon investigation that the brake pistons were not working on account of ice that was frozen upon them, coming from a washout plug above them; that he then procured and set fire to some waste and oil and applied it to the brake cylinders until the brakes worked, and he had no more trouble with them. The testimony of other engineers, having experience with air brakes, but who do not testify with respect to this particular engine, is that in very severe, cold weather the air appliances sometimes freeze and require to be thawed out. Matthews, the fireman, testified the air was not working, and the brakes could not be used at the time of the accident. The other men working with the engine testify that the brakes were in perfect working order at that time. If material, there was sufficient conflict in the evidence to take the matter to the jury.

We are unable to see wherein the condition of the brakes had anything to do with the accident, unless an inference may be drawn from the testimony that, if the brakes had been working properly, the engine, after knocking Huxoll down, would not have injured him fatally; that, when the switchman on the engine called to the engineer, an immediate stop could have been made, and Huxoll would not have been entangled in the brake. If the engine was only moving at the rate of three or four miles an hour, as these men say, the evidence shows that if the brakes had been set at once the engine would have made a quick stop and would not have dragged Huxoll for 60 or 70 feet. Riggs called to the engineer as soon as he felt the jolt occasioned

by the trucks running over Huxoll. The accident would have happened if the brakes had been working, since they were not applied, or attempted to be applied, until after Huxoll had been knocked down and run over. It seems a fair inference that Huxoll was fatally injured when run over by the trucks, although he was conscious after being extricated; but the evidence is not entirely clear, and we think there is sufficient doubt to render this a question for the jury. Defendant argues that, if deceased was injured by a defective brake, the defense of assumption of risk and contributory negligence are by the federal statute eliminated, and that it therefore was prejudicially erroneous to allow this issue to go to the jury. It is true that the statute thus provides, but we think that under the facts in this case the defendant is not in a position to complain that its substantial rights were adversely affected by the submission of these issues. We cannot give this matter the importance attached to it by defendant. Independent of the provisions of the federal law, we take the view that, though Huxoll assumed the ordinary risks of his employment, he did not assume such an extraordinary risk as that his employer would carelessly and negligently, while he was enveloped in a dense cloud of smoke and steam and was engaged in proceeding to his engine in the course of his duties, without warning or signal of any kind, run an engine through the fog and darkness upon him at such a rate of speed that it was impossible for him to know that it was coming until he was struck. Under the undisputed facts, the applicability of the safety appliance law is of no importance.

It may be as well at this point to say that there is practically no conflict in the evidence with respect to the condition of the weather, and the density of the clouds of smoke and steam that were flying; men who were working from 17 to 25 feet away from the switch engine as it passed the water-crane neither heard nor saw the engine until after the accident. There is conflict as to the ex-

tent of ice on or about the water-crane and platform, and a positive and direct conflict as to whether the bell was sounded on the switch engine, whether the bell ringing apparatus was in working order, as to the rate of speed that the engine was moving, and as to whether it was a custom or usual practice in the Sidney yards for a man to be stationed upon the foot-board at the forward end of the switch engine in order to warn persons on the tracks. It is shown by the testimony of defendant's employees that, in conditions such as were prevalent that morning where the vision was blinded by storm or fog, proper care in the movement of trains in the yards required greater precautions than when the vision is clear.

It is argued that the court erred in refusing instructions telling the jury that there was no evidence that defendant was negligent in the location of its roundhouse or in permitting clouds of smoke and steam to escape therefrom, and in giving instruction No. 15, which is as follows: "The distance from the main-line track at which the roundhouses of the defendant were located, the elevation of the ground beyond the roundhouses, the tendency of smoke from the roundhouses to collect about the tracks, and the presence of ice, to some extent, at least, in the vicinity of the water-crane, together with the conditions of the weather, as shown by the evidence, are proper subjects of consideration in determining whether the acts of the defendant's servants, on the one hand, and of the deceased, on the other, were such as persons of ordinary care and prudence would have done at the time and under the conditions surrounding the casualty in question; but the incidents just referred to are not, in and of themselves, causes or grounds of negligence upon which a recovery in favor of plaintiff can be had." There was no error in this. It would have done no harm to give the requested instructions withdrawing these grounds, but this was practically done by the foregoing instruction, and it was certainly proper to allow the jury to consider all the surrounding circumstances in determining whether the de-

fendant's servants were negligent and whether the deceased acted with proper care.

Assignments 5, 6 and 7 are with respect to the refusal to charge that the water-crane was not out of repair, and that there was no evidence that ice had negligently been permitted to accumulate around and about it. The charge that there was no proof that the water-crane was out of repair might properly have been given, but the jury could not have been misled by the failure to give it. As to the evidence of ice about the water-crane, Dupont, the fireman on Huxoll's engine, testified that Huxoll and he went southwest from the wash-house to a point between the turntable and the main line, and then went east, he walking north of the main line and Huxoll about 10 feet behind him between the rails; that when about 30 feet west of the crane he heard a noise like an engine, either east or west of them, and called to Huxoll; that his grip was struck by an engine and knocked out of his hand, and he turned and at that instant saw Huxoll knocked down. In a previous statement he had said that Huxoll was struck about 10 or 12 feet west of the water-crane. The yardmaster testified that there was more or less ice all about the platform and the track at the crane, and that about 15 feet west of the crane he found marks in the snow in the middle of the track that indicated Huxoll had been knocked down at that point. This is only about two steps from the west end of the platform. If the jury disbelieved Dupont's later testimony, and there was ice frozen on and about the platform, Huxoll, if walking parallel with the main track, may have stepped between the tracks to avoid the ice, or he may have lost his way in the dense cloud of smoke and steam. Plaintiff argues that Huxoll's body may have been driven backward when he was struck, so that he fell further to the west than where he was walking when struck. Whether this is a proper inference was a matter for the jury. We think that all the facts as to the conditions surrounding the

water-crane and platform were proper to be submitted, and no prejudicial error was committed in relation to this issue.

The next complaint argued is as to the instructions given and refused with respect to whether there was a rule or custom requiring switchmen to ride on the leading end of the switch engines in the Sidney yard. There is a conflict of evidence upon this, and the evidence to establish such custom is not strong. It may be noticed that a number of the questions asked by counsel for the defendant upon this point contain a negative pregnant. For example, in the examination of the foreman in charge of the roundhouse, defendant asked: "Do you know whether or not there was, or was not, a custom or practice, in that yard, on January 1, 1911, or prior to that time, of having any switchman riding on the leading end of the engine through the yards, for the purpose of warning or giving warning to the engineer of obstruction upon the track, or flagging the engine through steam or smoke? A. No, sir; there was no practice that I knew of, or observed." A similar question was asked Mr. Borton, the yardmaster: "Q. What was the practice or custom with reference to having a flagman or a switchman on the front end of an engine in switching in the yards, on the leading end of the engine, in order to flag the engine through steam or smoke or storm? A. We never put a man there for that purpose; it wasn't necessary." The questions do not ask whether a custom of placing men upon the leading end of engines while moving in the yards existed, but whether it was the custom to put them there to warn the engineer or to flag the engine. The court is committed to the doctrine of the *Glantz* case (*Glantz v. Chicago, B. & Q. R. Co.,* 90 Neb. 606) that to run a high-tank road engine backwards through railroad yards without a lookout, when to have one is the usual custom in such yards, is a negligent act. This is a humane doctrine, and we adhere to it. It may be true, as defendant asserts, that the cloud was so dense that a lookout could not have warned Huxoll

until too late, but the surrounding conditions were in evidence, and the matter was for the jury.

The court in this connection gave the following instruction: "25. The fact that road engine No. 213 was used by defendant for switching purposes at the time of the accident is not in and of itself negligence, and a recovery in plaintiff's favor cannot be based upon the fact that such engine was so used. It is proper, however, to take into consideration the type, form and equipment of said road engine, and any variance in its equipment from the class and type of engine usually employed in the switching service in determining whether the acts of defendant's servants, on the one hand, and of the deceased, on the other, were such as persons of ordinary character and prudence would have done at the time and under the conditions surrounding the casualty in question." This is as far as the court should have gone in withdrawing this issue from the jury.

Defendant contends there is no duty on the part of a railroad company to warn employees in its yards of moving engines, and cites the case of *Anderson v. Missouri P. R. Co.*, 95 Neb. 358, as establishing such a principle. No such weather conditions obtained in that case, and the rule announced cannot apply here.

Complaint is made that many of defendant's rules relating to the general operation of engines and not confined to their operation in switchyards were erroneously admitted in evidence. This is true as to several of the rules read to the jury, and, if we were satisfied the jury had been misled by any of this evidence, we would without hesitation reverse the judgment. But we are not so convinced. One of the rules complained of requires yard engines to display a headlight to the front and rear, by night, and another rule provides that, "when weather or other conditions obscure day signals, night signals must be used in addition." These rules were relevant, and it was for the jury to determine whether they were violated. Defendant was by no means free from the erroneous prac-

tice of offering immaterial rules. Other testimony was improperly admitted, but we are unable to see how its admission could have changed the result.

It is complained that the court erred in refusing to submit a special interrogatory as to the amount which the jury deducted for contributory negligence. The amount of the verdict indicates that the jury found no contributory negligence existed. The submission was a matter for the discretion of the trial court, and no abuse of discretion has been shown.

We are convinced that the facts in the case warrant the conclusion reached by the jury. The peculiar conditions demanded special care. Granting that the brakes were not out of repair, that there was no ice around the water-crane that required Huxoll to step between the tracks to avoid it, and that it was not customary to have a lookout on the leading end of the engine under ordinary conditions, still the reckless manner in which the engine was sent into the fog and cloud in the yard, without warning, as the jury evidently believed and found from the evidence, constituted such carelessness as to justify a verdict, and the question whether, under all the conditions, Huxoll was guilty of contributory negligence in being between the rails when struck was also one for the jury to determine.

The questions of law governing this case are few and simple, though the record is long and the briefs are elaborate. We find no error prejudicial to the substantial rights of the defendant, and the judgment of the district court is therefore

AFFIRMED.

ROSE and HAMER, JJ., not sitting.