JOHN PREISENDORF, JR., ET AL., APPELLEES, V. HAROLD K. JENKINS, APPELLANT.

228 N. W. 2d 591

Filed May 1, 1975. No. 39683.

Kelly & Kelly, for appellant.

Luebs, Tracy, Dowding, Beltzer & Leininger, for appellees.

Heard before SPENCER, BOSLAUGH, and BRODKEY, JJ., and HASTINGS and CLARK, District Judges.

CLARK, District Judge.

This is an action for specific performance of an alleged contract to sell a bar and restaurant business located in Grand Island, Nebraska. The District Court found that plaintiffs were entitled to specific performance of the contract but that the defendant had divested himself of the property, and therefore specific performance was impossible. The court further found that in lieu of specific performance plaintiffs were entitled to monetary damages in the amount of $8,000 and entered judgment accordingly. Defendant has appealed.

On August 12, 1972, defendant entered into a "Business Listing Contract" with one Bill Moore, a Grand Island realtor and business broker. By the terms of this listing agreement Moore was given the sole and exclusive right to sell the business known as "The Library Lounge."

This agreement listed the asking price for the business as $31,500 on cash terms and specified Moore's commission to be whatever amount in excess of $31,500 a buyer would agree to pay. The agreement was executed by defendant as "Owner."

Moore approached plaintiffs regarding possible purchase of "The Library," and on August 21, 1972, plaintiffs executed a purchase agreement for the business and gave to Moore a check for $3,500 as earnest money. The purchase agreement of August 21, 1972, varied the terms of payment from those set out in the listing agreement and provided that it was subject to written approval and acceptance by defendant on or before August 28, 1972.

When this purchase agreement was tendered to defendant by Moore, defendant rejected it and told Moore that there was an apparent misunderstanding in that he, the defendant, was not the sole owner of "The Library." It then developed that defendant was actually the owner of two-thirds of the stock in the S-J corporation, which corporation owned "The Library." The other one-third of S-J corporation stock was owned by one Larry Stromer, who actually operated "The Library." Defendant also stated he felt a moral obligation to give Stromer first chance to buy "The Library."

Moore advised plaintiffs of defendant's rejection of the purchase agreement. On August 24, 1972, plaintiff executed a second purchase agreement which met the terms set out in the listing agreement with Moore and listed the purchase price as $35,500. This second purchase agreement provided that it was subject to the written approval and acceptance by defendant on or before August 28, 1972.

Moore tendered the second purchase agreement to defendant and was informed that he, the defendant, still felt the same way about giving Stromer first chance to buy. Defendant did not approve or accept the agreement.

Subsequently, within several days after August 24, 1972, two meetings were held between plaintiffs, defendant, and Moore. At these meetings, although the testimony is in some conflict, defendant apparently informed plaintiffs that he felt a moral obligation to let Stromer buy him out if Stromer could raise the money. Further conversation resulted in an agreement by the plaintiffs and defendant to allow Stromer 60 days in which to raise the money. Plaintiffs had the impression that if Stromer didn't raise the money, defendant would sell to them. Moore made the notation on the second purchase agreement "Refused 25th."

Defendant also advised plaintiffs that he was not in fact the owner of "The Library" but only the majority stockholder in the S-J corporation.

On October 16, 1972, counsel for plaintiffs advised Moore by letter that plaintiffs believed defendant had contracted to sell "The Library" and they intended to consummate the transaction on October 25, 1972. On November 6, 1972, plaintiffs' counsel wrote defendant that plaintiffs intended to buy the "Library Lounge" from defendant for the price of $35,500.

On December 11, 1972, defendant sold all his stock in the S-J corporation to Larry Stromer for $35,000.

On January 22, 1973, plaintiffs commenced this action.

Defendant's assignments of error may be summarized as follows: (1) Error in finding plaintiffs were entitled to specific performance; (2) error in awarding monetary damages in lieu of specific performance; and (3) excessiveness of damages allowed.

This being an action in equity, it is tried de novo in this court.

We first consider whether a valid contract was entered into between the parties. Upon consideration of the record, we conclude there was not. Before there can be specific performance of an oral contract, the contract itself must be proved. Griggs v. Oak, 164 Neb. 296, 82 N. W. 2d 410.

The listing agreement with Moore was nothing more than a broker's contract giving Moore the exclusive right to procure a purchaser for the property. It did not constitute an offer to the plaintiffs. ". . . the words 'for sale,' 'to sell,' and the like, in a broker's contract of employment, amount to nothing more than an employment to find a purchaser and to present him to the owner or to conduct negotiations with him and does not of itself give the broker any authority to make a binding contract of sale on behalf of the owner." 12 C. J. S. Brokers, § 20, p. 63. See, also, Gould v. Rockwell, 105 Neb. 724, 181 N. W. 655; Kobza v. Spath, 166 Neb. 623, 90 N. W. 2d 246.

Both of plaintiffs' purchase agreements required written acceptance by defendant on or before August 28, 1972. They were not an acceptance of any offer by defendant, but were offers by plaintiffs. They were never signed by defendant and obviously were rejected by him. In subsequent conversations with plaintiffs, the defendant merely indicated that he felt a moral obligation to give Stromer first chance to buy. The parties then agreed to wait 60 days to see if Stromer could raise the money. This was not sufficient to constitute an acceptance of plaintiffs' offer, and therefore there was never a valid acceptance.

Further, it is obvious there was never a meeting of the minds between the parties. Plaintiffs' offer was for purchase of the "Library Lounge" in its entirety, and their demand for performance was also in that tenor. In reality, defendant owned only two-thirds of the stock of the corporation which owned the business, and he so informed the plaintiffs.

Having so ruled, we find it unnecessary to consider defendant's other assignments of error.

The judgment of the District Court is reversed and the cause dismissed.

REVERSED AND DISMISSED.