FLEMING REALTY AND INSURANCE, INC., A CORPORATION, APPELLEE AND CROSS-APPELLANT, V. LLOYD L. EVANS, ET AL., APPELLANTS AND CROSS-APPELLEES.

259 N. W. 2d 604

Filed November 16, 1977. No. 41161.

Nelson, Harding, Marchetti, Leonard & Tate, Kenneth Cobb, and Brian Ridenour, for appellants.

Edward E. Hannon of Cronin & Hannon, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

WHITE, C. J.

This is an action for the collection of a real estate commission allegedly due the plaintiff, a licensed real estate broker, from the defendants. The case was tried to a jury and a verdict in the amount of $4,675.20 returned for the plaintiff. The defendants filed a motion for judgment notwithstanding the verdict or in the alternative for a new trial which was overruled, and they now appeal. We affirm the judgment of the District Court.

The plaintiff entered into an exclusive listing agreement with the defendants who desired to sell certain realty. The defendants promised to pay the plaintiff a 3 percent commission for its services. While the listing was in effect, the plaintiff presented the defendants with a purchaser, one Neal Hasselbalch, who signed a uniform purchase agreement offering to purchase the property on the terms specified in the listing agreement. The defendants refused to sell their property to Hasselbalch and the plaintiff commenced this action to recover the commission which allegedly became due upon the production of Hasselbalch, a "ready, willing, and able" purchaser.

The defendants argue that they are not obligated to pay the plaintiff the stated commission. The defendants refused to sell their property to Hasselbalch for the apparent reason that they were not satisfied with his financial ability to consummate the sale.

It is true, as the defendants point out, that a seller is under no obligation to sell his property to a purchaser procured by a broker. The broker's obligation is merely to provide a purchaser, and he has no authority, unless otherwise specifically agreed upon, to enter into a binding contract of sale, on behalf of the seller, with the purchaser. See, Brezina v. Hill, 195 Neb. 481, 238 N. W. 2d 903 (1976); Preisendorf v. Jenkins, 193 Neb. 611, 228 N. W. 2d 591 (1975); Gould v. Rockwell, 105 Neb. 724, 181 N. W. 755 (1921).

The fact, however that the seller exercises his right not to sell the listed property to the purchaser produced by the broker does not relieve the seller of his obligation to pay the broker the agreed-upon commission. As stated in 12 Am. Jur. 2d, Brokers, § 183, p. 922: "As a general rule, under the ordinary undertaking of a broker, the broker is not entitled to the compensation called for by his contract of employment until he produces a person who is ready, able, and willing both to accept and live up to the terms offered by his principal. On the other hand, and in the absence of any stipulation to the contrary in the contract of employment, the broker is entitled to his commissions when he produces such a person, notwithstanding that his employer refuses to transact business with the person in question."

In Cornett v. Nathan, 196 Neb. 277, 242 N. W. 2d 855 (1976), we stated: " * * * a broker has not earned his commission unless he produces a buyer who is ready, able, and willing to buy on terms satisfactory to the seller. In Wisnieski v. Coufal, 188 Neb. 200, 195 N. W. 2d 750, we said: 'A broker earns his commission and becomes entitled thereto when he produces a purchaser who is ready, able, and willing to purchase at a price and upon terms specified by the principal or satisfactory to him.' In Huston Co. v. Mooney, 190 Neb. 242, 207 N. W. 2d 525, this court said: 'Ordinarily a real estate broker who for a commission undertakes to sell land on certain terms

and within a specific period, is not entitled to compensation for his services unless he produces a purchaser within the time limited who is ready, able, and willing to buy upon the terms prescribed.' ''

The plaintiff produced a purchaser, Neal Hasselbalch, within the time period of the listing who offered to purchase the defendants' property on the terms specified in the listing agreement. The plaintiff was thus entitled to its commission if Hasselbalch was a ''ready, able, and willing'' purchaser, despite the defendants' refusal to sell their property to Hasselbalch.

A prospective purchaser is financially able if he has capability to make the downpayment and all deferred payments required under the proposed contract of sale. 12 Am. Jur. 2d, Brokers, § 184, p. 924. A jury verdict was returned for the plaintiff. The jury must necessarily have concluded that Hasselbalch was financially able to purchase the defendants' property according to the terms of the listing agreement. The verdict of a jury based upon conflicting evidence will not be set aside on appeal unless clearly wrong. Grady v. Denbeck, 197 Neb. 795, 251 N. W. 2d 164 (1977); First Mid America, Inc. v. Palmer, 197 Neb. 224, 248 N. W. 2d 30 (1976).

The total selling price of the defendants' land was $155,840. According to the terms of the listing agreement this sum was to be paid as follows: $34,000 down and $12,184 per year for 10 years.

Dean Fleming, president of the plaintiff, testified that he told the defendant Lloyd Evans that Hasselbalch had 800 acres of pasture land and that he was confident that he could farm or ranch in Holt County. Fleming testified that he checked Hasselbalch's financial ability with the Columbus Production Credit Association and the Federal Land Bank and that he knew Hasselbalch's net worth to be between $300,000 and $400,000. Fleming testified as an expert witness as to the fair rental value of the de-

fendants' ranch. In his opinion it would have had a fair rental value of $10,000 in 1973; $12,000 in 1974; $14,000 in 1975; and from $14,000 to $16,000 in 1976.

Clifford Sieck, a salesman for the plaintiff, testified that he checked the financial condition of Hasselbalch with an acquaintance named Walt Landwher and was told by him that Hasselbalch was qualified to buy anything he wanted. Landwher stated that he would sell Hasselbalch anything that he wanted in any way he wanted to buy it.

A financial statement dated February 1, 1973, given to the Columbus Production Credit Association by Hasselbalch was introduced into evidence. It showed Hasselbalch as having a net worth of $253,483. The records of the Columbus Production Credit Association listed Hasselbalch as a "good farmer and operator." Neil Schlines, vice president of the Columbus Production Credit Association testified that he had no reservations about Hasselbalch's ability to carry out the contract.

Alvin M. Grubaugh, president of the Columbus Federal Land Bank Association testified by deposition that he had known Hasselbalch for 20 years and was familiar with his farming operation. As of November 1972, the records of the Federal Land Bank show that Hasselbalch had given a financial statement showing a new worth of $239,082. Grubaugh rendered the opinion that Hasselbalch could fulfill the contract.

Hasselbalch testified by deposition that he had been operating on his own for about 20 years. He testified that he owned 800 acres and farmed 160 acres which belong to his parents; 220 acres of which was irrigated farm land. He testified that he was confident he could raise the money required to fulfill the contract, and that he had never defaulted to any big lender before.

There was ample evidence for the jury to conclude that Hasselbalch was financially able to complete

the transaction and that plaintiff had provided defendants with a "ready, able, and willing" purchaser, thus becoming entitled under the terms of the listing agreement to the agreed commission.

The defendants next contend that there were several prejudicial errors relating to the instructions. They first contend that the District Court erred in giving instructions Nos. 5 and 6 for the reason that they incorrectly state the proof required of the plaintiff. We have examined both instructions and find that they correctly state the law. Shell Oil Co. v. Kapler, 235 Minn. 292, 50 N. W. 2d 707 (1951); Winkelman v. Allen, 214 Kan. 22, 519 P. 2d 1377 (1974); Cornett v. Nathan, *supra*. There was no error in these instructions.

Instruction No. 5 as given by the court to the jury stated in part: "Generally speaking, a purchaser of real estate is financially ready and able to buy:

"(1) If he has the needed cash in hand,

"or

"(2) if he is personally possessed of assets, which in part may consist of the property to be purchased, and a credit rating which enable him with reasonable certainty to command the requisite funds at the required time,

"or

"(3) if he has definitely arranged to raise the necessary money, or as much thereof as he is *able* to supply personally, by having a binding commitment for a loan to him for that purpose by a financially able third party." (Emphasis supplied.)

The defendants point out an error in this instruction as given. The third subpart of this instruction as given stated "or as much thereof as he is able." To be in accord with the case law, the third subpart should read "or as much thereof as he is *unable*." The defendants argue that this substitution of the word "able" for "unable" was prejudicial and warrants reversal.

We have held that the giving of a technically incorrect instruction is not ground for reversal where it could not have prejudiced the rights of the losing party. Young v. Beveridge, 81 Neb. 180, 115 N. W. 766 (1908); Huxoll v. Union P. R. R. Co., 99 Neb. 170, 155 N. W. 900, affirmed 245 U. S. 535, 38 S. Ct. 187, 62 L. Ed. 455 (1915).

In Leonhardt v. Harimon, 185 Neb. 224, 174 N. W. 2d 926 (1970), we stated: ''An erroneous instruction is not necessarily prejudicial error. The meaning of an instruction and not its phraseology is the important consideration. Where the meaning of an instruction is reasonably clear, it is not prejudicially erroneous. Zager v. Johnson, 175 Neb. 866, 124 N. W. 2d 390. An inadvertent substitution of one word for another in an instruction is harmless error if it is clear from the instruction itself and other instructions given that the jury was not confused or misled by the error. Pierson v. Jensen, 150 Neb. 86, 33 N. W. 2d 462.''

In Tidd v. Stull, 128 Neb. 506, 259 N. W. 369 (1935), the court held that the trial court's inadvertent substitution of the word ''plaintiff'' for ''defendant'' in an instruction was harmless error where the jury could not have been misled thereby. See, also, Blanchard v. Lawson, 148 Neb. 299, 27 N. W. 2d 217 (1947).

We do not believe that the inadvertent substitution of the word ''able'' for ''unable'' is ground for reversal. We fail to see how, in light of the other instructions, the jury could have been confused or misled. There is no merit to this contention.

The defendants also find error in the trial court's failure to give their requested instructions Nos. 2, 4, and 6. We have examined this contention and find no error by the District Court in failing to give these instructions. The contention is without merit.

The only question remaining is the contention on cross-appeal that the court should have allowed

prejudgment interest on the jury verdict of $4,675.20.

The written listing contract entitled the plaintiff to recover 3 percent commission on the sale price of $155,840. In Abbott v. Abbott, 188 Neb. 61, 195 N. W. 2d 204, (1972), this court said as follows: ''Where the amount of a claim is liquidated, compensation in the form of prejudgment interest is allowed as a matter of right. 'A claim is liquidated if the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance upon opinion or discretion. Examples are *claims upon promises to pay a fixed sum,* claims for money had and received, claims for money paid out, and claims for goods or services to be paid for at an agreed rate.' McCormick, Damages, c. 7, s. 54, p. 213 (1935). See, also, § 45-104, R. R. S. 1943; Mid States Engineering v. Rhode, 182 Neb. 590, 156 N. W. 2d 149 (1968).'' (Emphasis supplied.)

The general rule is that where the amount of the broker's commission is certain, as in this case, or can be made certain by computation, he is entitled to interest thereon from the time it became due. 12 C. J. S., Brokers, § 123, p. 321. In the present case, the listing agreement calls for a May 1, 1973, closing. The listing expired April 1, 1973, and the record shows that the plaintiff produced a buyer on March 28, 1973. Clearly this is one of the cases in which the amount due can be ascertained by computation. As stated in Abbott v. Abbott, *supra*, we are dealing with a written contract in which the amount due can be computed as to exactness and without reliance upon opinion or discretion. We hold, therefore, that in this case the claim is liquidated and that the plaintiff is entitled to prejudgment interest from the period of May 1, 1973, to June 29, 1976.

The judgment for the plaintiff is affirmed and the cross-appeal is sustained with directions to the Dis-

trict Court to enter prejudgment interest in conformity with this opinion.

The judgment, as modified, is affirmed.

AFFIRMED AS MODIFIED.