NEBRASKA PUBLIC POWER DISTRICT, a Nebraska Corporation and Political Subdivision of the State of Nebraska, Appellee/Cross-Appellant,

v.

BORG–WARNER CORPORATION, a Delaware Corporation, Appellant/Cross-Appellee.

Nos. 79–1662, 79–1698.

United States Court of Appeals, Eighth Circuit.

Submitted March 13, 1980.

Decided May 1, 1980.

Johnson, DeMars & Flodman, Lincoln, Neb., on brief.

Before BRIGHT, ROSS and ARNOLD, Circuit Judges.

BRIGHT, Circuit Judge.

Nebraska Public Power District (the District) brought this action for breach of contracts against Borg-Warner Corporation (B–W) and recovered a judgment in the net amount of $420,452.53 without prejudgment interest. B–W appeals, asserting that the trial court[1] erred in excluding certain evidence (No. 79–1662). The District cross-appeals, seeking prejudgment interest on all or part of the award (No. 79–1698). We affirm on both appeals.

In 1968, the District awarded contracts to B–W to manufacture and install circulating water pumps and condensate pumps for the Cooper Nuclear Station on the Missouri River, near Brownsville, Missouri. In these contracts, B–W warranted the fitness of the equipment and materials and guaranteed to remedy all defects free of expense to the District.

Problems with the circulating water pumps arose when, after installation, an unanticipated amount of mud and silt collected in the water storage bays beneath the four pumps. The District, with the alleged approval of B–W, backflushed[2] the water pumping system in an attempt to remove the debris from the bays. In the process, the vortex eliminators[3] mounted to the base of each bay were torn from their mountings, and the circulating pumps themselves were damaged.

The District brought this action, alleging that B–W breached its warranties covering the circulating water pump system. In addition, the District claimed a breach of war-

J. Arthur Curtiss, Baylor, Evnen, Baylor, Curtiss & Grimit, Lincoln, Neb., for Borg-Warner.

Thomas W. Evans, Mudge, Rose, Guthrie & Alexander, New York City, argued for Nebraska Public Power Dist.; Barlow,

---

1. The Hon. Warren K. Urbom, Chief Judge, United States District Court for the District of Nebraska.

2. Backflushing is a method of propelling water out of these suction pumps. One or two of the series of four pumps are energized and pump water up from the Missouri River through a manifold backwards down a third pump that is not energized. As the water rushes through the third pump, its impeller blades free wheel in reverse and the forced water clears the accumulated silt out of the water pump bay.

3. A vortex eliminator consists primarily of splitter vane or splitter plate and operates to direct water from the storage bay into the suction bell of the water pumps.

ranty for certain defects in the condensate pump system.[4] B–W counterclaimed for additional expenses it incurred in complying with special requests made by the District. The jury found for the District on its claims and dismissed the B–W counterclaim. The district court entered judgment on the jury verdict without prejudgment interest. These appeals followed.

## I. The Trial Court's Evidentiary Ruling (No. 79–1662).

B–W appeals the trial court's exclusion of two exhibits from evidence: exhibit 537, B–W's original design drawing of the vortex eliminators; and exhibit 538, a transmittal letter from the District's project engineers, Burns and Roe, Inc., proposing changes in exhibit 537. Before B–W offered the questioned exhibits, two witnesses for the District testified that B–W alone had prepared the final design drawings for the vortex eliminators. These final drawings were identified as exhibit 291.

B–W presented evidence from its own engineer, Erick Fiske, that exhibit 291 represented a modification of B–W's original drawings of the vortex eliminators with mountings. Fiske testified that Burns and Roe, Inc., the project engineers, proposed changes in the mountings. The changes called for the vortex eliminators to be welded to embedded plates secured to the concrete floor by anchor bolts. The prior B–W design called for embedding the edges of vertical · splitter plates into the concrete floor of the bays after welding them to reinforcing bars, also embedded in concrete. B–W modified its drawings in accordance with the Burns and Roe proposal.

■ Initially, the court admitted into evidence without objection the original drawings, represented by exhibit 537. When B–W sought to supplement the record with exhibit 538, the letter transmitting changes from the project engineers to B–W, the court struck both exhibits on the ground that those documents had not been listed in the pretrial order, as required by Local Rule 25B of the District of Nebraska. That local rule requires the parties to list all exhibits to be used at trial, except those "to be used solely for impeachment purposes." Clearly, Local Rule 25B justified exclusion of the exhibit as substantive evidence.

■ B–W claims the exhibits should have been admitted to impeach testimony that B–W alone had prepared the final design. The trial court observed that B–W offered the evidence as rebuttal. The trial court also commented that the District's witness, Mr. Severino, who identified exhibit 291 as B–W's design, had travelled a long distance to testify at the trial and had been excused as a witness. The trial court observed that witness Severino "was not accorded an opportunity to confront the [impeaching] document  *  *  *." [5]

B–W further claims that for impeachment purposes it did not have to afford Severino an opportunity to confront these exhibits because these items constituted adoptive admissions of a party-opponent through the District's agent, Burns and Roe. See Fed.R.Evid. 613(b) and 801(d)(2)(D).[6]

Assuming that the questioned exhibits should have been admitted in evidence for impeachment, the alleged error in denying their admission cannot be deemed prejudicial. See Fed.R.Civ.P. 61. B–W's witness and employee, Erick Fiske, described exhibit 537 in detail and explained its relationship to exhibit 291. The trial court refused to strike this testimony. Moreover, that initial design represented by exhibit 537 is only tangentially relevant to the issues presented to the jury, because B–W war-

---

4. The appellant does not question this award of damages on appeal.

5. In this regard, the trial court apparently considered introduction of the exhibits as analogous to introducing an inconsistent statement of a witness for purposes of impeachment. Before introducing an inconsistent statement, the

examiner must afford the witness an opportunity to explain or deny the alleged inconsistent statement. Fed.R.Evid. 613(b).

6. B–W also asserts that such confrontation is unnecessary where the witness's statement is impeached by contradictory evidence. See 3 Weinstein's Evidence 607–50 (1975).

ranted the final design in which it adopted the Burns and Roe modifications. Finally, with knowledge of that design, B–W's representative expressly authorized the back-flushing.

Accordingly, B–W's appeal must be rejected.

## II. *Prejudgment Interest (No. 79–1698).*

The District asserts that under Neb.Rev. Stat. § 45–104 (Reissue of 1978)[7] it is entitled to interest from a date six months after it served a demand letter upon B–W. The May 2, 1975, demand letter claimed damages of $498,800, of which $417,200 applied to the circulating water pumps and $86,000 applied to the condensate pumps. The District later reduced its demand for breach of warranty in installing the condensate pumps to $81,600, correcting a mathematical error.

After receiving instructions calling for reasonable compensation and requiring reasonable certainty in awarding damages, the jury returned a verdict effectively equivalent to the exact amount of the claims for damages to the water pumps in the sum of $417,200 (computed by adding the jury verdict of $389,152.53 to withheld retainage on the contract of $28,047.47). On the condensate pump claim, the jury disallowed an item of $50,300 for installing a condensate pump recirculating system but did award the District the sum of $31,300, which equals the cost of repairs and replacement of only the pump impeller.

The trial court denied the District's claim for prejudgment interest despite the substantial coincidence in the amounts awarded by the jury, proven as damages, and asserted in the demand letter. The trial court noted that the complaint sought damages in excess of those in the demand letter

plus "an amount yet to be determined." The trial court also referred to its instructions calling for the jury to estimate damages with a reasonable degree of certainty and to award reasonable compensation to the District. Finally, in holding that the District's claims were not liquidated, the trial court concluded that these claims did not "fit the mold of the Nebraska rule on prejudgment interest."[8]

We have recently characterized the Nebraska prejudgment interest rule as follows:

Nebraska law requires prejudgment interest when the amount of the claim is liquidated. *Abbott v. Abbott*, 188 Neb. 61, 195 N.W.2d 204, 209 (1972); *Mintken v. Nebraska Surety Co.*, 187 Neb. 215, 188 N.W.2d 819 (1971). [*Omaha Paper Stock Co. v. Harbor Insurance Co.*, 596 F.2d 283, 292 (8th Cir. 1979) (footnote omitted).]

The Nebraska Supreme Court has adopted the following definition of "liquidated":

"A claim is liquidated if the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance upon opinion or discretion. Examples are claims upon promises to pay a fixed sum, claims for money had and received, claims for money paid out, and claims for goods or services to be paid for at an agreed rate." [*Abbott v. Abbott*, 188 Neb. 61, 195 N.W.2d 204, 209 (1972) (citation omitted), *quoting* McCormick, *Damages* § 54 (1935).]

The District maintains that, as of the date of the demand letter, May 2, 1975, the damage claim became liquidated. The District asserts that B–W did not actively contest either the amount of the claim nor the District's right to the amount demanded if

---

7. Neb.Rev.Stat. § 45–104 (Reissue of 1978) provides:

*Interest; other contract obligations.* On money due on any instrument in writing, or on settlement of the account from the day the balance shall be agreed upon, on money received to the use of another and retained without the owner's consent, express or implied, from the receipt thereof, and on money

loaned or due and withheld by unreasonable delay of payment, interest shall be allowed at the rate of six per cent per annum. Unsettled accounts between parties shall bear interest after six months from the date of the last item thereof.

8. In this diversity case, we are governed by Nebraska law.

it prevailed on all liability issues. Finally, the District emphasizes the fact that, aside from the reduction in condensate pump damages, the jury awarded the exact amount claimed in the demand letter.

■ We have examined these contentions in light of Nebraska law, and we conclude that the District has failed to demonstrate that the district court misapplied that law. Although there have been occasional inconsistencies in applying the definition of "liquidated damages," a common theme in Nebraska caselaw is that such damages must be "readily determinable" or "ascertainable by computation or a recognized standard." *Mintken v. Nebraska Surety Co.*, 187 Neb. 215, 188 N.W.2d 819, 821 (1971); *Mid States Engineering v. Rohde*, 182 Neb. 590, 156 N.W.2d 149, 152 (1968). The District asserts that it computed its claims in accordance with industry standards, but it cites no case for the proposition that this procedure makes the claims "readily determinable."

A number of Nebraska cases allow recovery of prejudgment interest where the claim is based on the contract price or a schedule listed in the contract. *See, e. g., Wiebe Construction v. School District of Millard*, 198 Neb. 730, 255 N.W.2d 413, 416 (1977) (claim for the balance owed on the contract price); *Fleming Realty & Ins., Inc. v. Evans*, 199 Neb. 440, 259 N.W.2d 604, 608 (1977) (claim for a brokerage commission listed in the contract); *Mid States Engineering v. Rohde, supra* (claim derived by multiplying gallonage of water used times contract schedule price). In other cases the claim can be readily ascertained by reference to the amount of money that has passed between the parties. *See, e. g., King v. Sky Harbor Air Service, Inc.*, 204 Neb. 4, 281 N.W.2d 209 (1979) (claim for downpayment which was not returned after the parties agreed to terminate the contract). Finally, another group of cases holds that a claim based upon the market value of certain goods may be sufficiently determinable to allow prejudgment interest. *See, e. g.,*

*Schmidt v. Knox*, 191 Neb. 302, 215 N.W.2d 77 (1974) (claim for market price of undelivered beans).

At least one Nebraska case assessing damages for breach of contract supports the trial court's ruling. In *Schweitz v. Robatham*, 194 Neb. 668, 234 N.W.2d 834 (1975), a contractor sued a landowner for the balance due on a contract to construct a barn. The landowner, alleging defective performance because the roof blew off in a storm, counterclaimed for the expense of hiring another contractor to repair the building, the cost of cleaning the building, and lost profits. The trial court awarded the counterclaimant-landowner the exact amount of the expenses incurred in hiring the other contractor, $10,061.04, but refused to allow prejudgment interest on that sum.[9] On appeal the Nebraska Supreme Court determined the amount awarded on the counterclaim to be unliquidated despite the coincidence in the expense of repair and the judgment award. The court stated: "Interest on damages for breach of a building contract, where the amount of the claim is not known or determinable, runs from the date of the judgment." *Id.* at 837 (citation omitted).

The District relies on a recent Eighth Circuit case granting prejudgment interest under Nebraska law. In *Ford Motor Co. v. Auto Supply Co., Inc.*, 615 F.2d 757 (8th Cir. 1980) (affirming and remanding unreported Civ. No. 76-0-300, D.Neb. Feb. 14, 1979), we affirmed an award of prejudgment interest in a settlement of accounts between an automotive parts manufacturer and its distributor. We also affirmed the district court's determination that balances due between the parties on open account, on returned inventory and on chargebacks for disallowed accounts all qualified as liquidated items. The last item, chargebacks for disallowed accounts, reflected the manufacturer's claims for credit for overpayment of redistribution allowances and recompensation claims. The district court disallowed portions of the manufacturer's claim for chargebacks but allowed prejudgment interest on the remainder, finding that "[t]he

---

9. The trial court made this award subject to a setoff of $6,332.13, the balance due to the plaintiff-contractor under the original contract.

*Schweitz v. Robatham, supra,* 234 N.W.2d at 836.

fact that Ford failed to establish similar violations [of the sales contract did] not render the entire claim unliquidated." The district court reasoned that, because the amount of disputed chargebacks could be verified by resort to accounting records, the amounts could be determined without reliance on discretion or opinion and hence constituted liquidated items. The computation of allowable payments made between the parties in *Ford Motor Company*, thus, differs somewhat from that made in the litigation before us where the jury, under instructions, determined the reasonableness of the items of contract damages.

■ In view of the foregoing, we cannot say that in denying prejudgment interest the district court misapplied Nebraska law.[10] Accordingly, we affirm.

---

10. Were we free to construe the term "liquidated damages" without the gloss of Nebraska cases, we would be inclined to give that term a less rigid construction than the district court. We think that equitably, particularly in these days of high interest rates, the wronged party should ordinarily collect prejudgment interest where the damages can be computed with reasonable precision. However, we are bound in this case to give great weight to the application of state law by the trial judge. *See Foremost Insurance Co. v. Sheppard*, 610 F.2d 551, 554 (8th Cir. 1979), and cases cited therein.