**COX CABLE OF CEDAR RAPIDS, INC., Appellant,**

v.

**BOARD OF REVIEW OF CITY OF CEDAR RAPIDS, Appellee.**

No. 93–595.

Supreme Court of Iowa.

Sept. 21, 1994.

Mark R. Schuling of Brick, Gentry, Bowers, Swartz, Stoltze, Schuling & Levis, P.C., Des Moines, for appellant.

James H. Flitz, Cedar Rapids, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LAVORATO, NEUMAN, and TERNUS, JJ.

LAVORATO, Justice.

The main issue in this tax assessment appeal is whether "house drops" are assessed to the owner of the real estate or to the cable television company that installs them. The district court ruled they are assessed to the cable television company. The district court

also ruled that the cable television company here failed to prove the valuation was excessive. We agree and affirm.

Cox Cable of Cedar Rapids, Inc., operates a cable television business in Cedar Rapids under a franchise issued by the city. The business includes land, buildings, and specialized machinery and equipment located in Cedar Rapids.

Cox installed its Cedar Rapids cable television system in 1979. As of January 1, 1991, the system had a channel capacity of 35. There were 121.54 miles of underground distribution and 289.39 miles of aerial distribution. The system provides services to 32,103 customers through approximately 450 miles of drops.

Cox receives television signals via five satellite receiver dishes and off-air antennas. The signals are processed through a "head-end" assortment of generators, modulators, and descramblers to produce a signal that can be sent through the distribution system to the subscriber's home.

The signal leaves the head-end through a "trunk line." From there the signal is distributed via amplifiers through the suburban streets on a "feeder line." The feeder line is a one-half inch coaxial aluminum jacketed cable mounted on electric and telephone poles.

Cox constructed the system with "taps" placed conveniently between sets of homes. These are inserted into the feeder line, and the taps connect individual subscribers to the feeder line via a house drop. The drop is a three-eighths inch coaxial cable that has a screw-on end connector like the ones used from a television to a video recorder. The connector is screwed onto the tap. The drop is clamped to a support wire close to the tap and then strung to the house.

At the house, the drop is attached to a screw hook near the roof line. The drop is then brought down the side of the house and attached to a ground block. The ground block is attached to the house with screws. A fourteen-gauge ground wire is attached to the ground block and to an eight foot by five-eighths inch copper clad steel ground rod.

From the other side of the ground block, the drop is brought into the house and runs through the walls to the television. On the outside of the house the drop is attached by siding clips, roka clips, or staples. On the inside of the house the drop is attached to the floor joists or other areas of the house with staples or other attachment materials.

Some of the distribution system is underground. In the underground system when a feeder line is brought into a group of homes, the line emerges into a metal "pedestal" out of the ground. The pedestal contains a tap like the ones used in aerial construction. The drop is connected to the tap and the cable is laid and buried in a trench to the subscriber's home.

Cox pays the cost of installing the house drops. Specially trained Cox employees install the house drops. Subscribers pay for any modifications they wish to make to the house drops. Cox does all other repair or replacement of house drops at its own cost. House drops remain with each house when subscribers discontinue service or move from the property.

In 1991 and 1992, the Cedar Rapids city assessor included in the property tax assessment against Cox the value of active subscriber house drops. The valuation assessment was $770,472 for each year.

Cox filed protests against the 1991 and 1992 assessments with the Cedar Rapids board of review. The board refused to adjust either assessment.

Cox appealed the board's decisions to the district court which consolidated the appeals for trial.

Following a hearing, the district court concluded that the house drops were—for tax purposes—to be assessed to Cox. The court also ruled that Cox did not prove the valuation assessment of $770,472 for each year was excessive.

It is from this ruling that Cox appeals.

Because tax assessment appeals are equity proceedings, our review is de novo. *See* Iowa Code § 441.39 (1991); Iowa R.App.P. 4. In our de novo review, we give weight to the district court's fact-findings, especially when

considering the credibility of witnesses. Iowa R.App.P. 14(f)(7).

■ I. Effective July 1, 1987, all taxes on personal property as defined in Iowa Code section 427A.1 were repealed. *See* 1985 Iowa Acts ch. 32, § 105 (codified as Iowa Code § 427A.10). However, section 427A.1 provides that personal property, if it is attached to real estate, is taxed. Section 427A.1(1) provides in relevant part:

> For the purposes of property taxation only, the following shall be assessed and taxed, unless otherwise qualified for exemption, as real property:
>
> . . . .
>
> c. Buildings, structures or improvements, any of which are constructed on or in the land, *attached* to the land, or placed upon a foundation whether or not *attached* to the foundation.
>
> d. Buildings, structures, equipment, machinery or improvements, any of which are *attached* to the buildings, structures, or improvements defined in paragraph "c" of this subsection.

(Emphasis added.)

The italicized word "attached" in paragraphs (c) and (d) is defined in Iowa Code section 427A.1(2) this way:

> As used in subsection 1, "attached" means any of the following:
>
> a. Connected by an adhesive preparation.
>
> b. Connected in a manner so that disconnecting requires the removal of one or more fastening devices, other than electric plugs.
>
> c. Connected in a manner so that removal requires substantial modification or alteration of the property removed or the property from which it is removed.

We agree with the board that house drops are taxable as real property. Earlier we described in detail how the house drops are attached to the real estate. This attachment qualifies the house drops as improvements "attached to the land" under section 427A.1(1)(c). The house drops are connected in such a manner "that disconnecting [them] requires the removal of one or more fasten-ing devices, other than electric plugs." Iowa Code § 427A.1(2)(b). We note that Cox has refrained from contending that the house drops are not taxable as real property.

Our analysis does not end here. We must still decide to whom the house drops are assessed.

■ II. Cox's position is based solely on a *fixtures* argument. Cox maintains that as fixtures, house drops are assessed as part of the real property to which they are permanently affixed under its interpretation of *Ruan Center Corp. v. Board of Review*, 297 N.W.2d 538 (Iowa 1980). So, Cox concludes, the house drops should be assessed against the individual subscribers.

Cox's reliance on *Ruan* is misplaced. As the following passage makes clear, the situation there was a special one:

> As a general rule, property that is leased is listed by, and taxed to, the lessor. § 428.1(6), The Code 1975. If a tenant improves the real estate, by either building a new structure or adding on to an existing structure, the tenant can be taxed after listing the property. *Id.*, § 428.4. This statutory scheme puts the burden on the taxpayers, rather than the assessor, to decide who is going to pay taxes on real property that has been improved by someone other than the owner. It relieves the assessor of the burden of investigating whether a tenant or a lessor improved the property. In this case, therefore, the assessor properly assessed taxes on the improvements by tenants to Ruan.

*Ruan Ctr. Corp. v. Board of Review*, 297 N.W.2d 538, 541 (Iowa 1980).

Here the drops are not leasehold improvements. In that event the general provision— and not the special provisions—of section 428.1 controls. The general provision of section 428.1 provides:

> Every inhabitant of this state, of full age and sound mind, shall list for the assessor all property subject to taxation in the state, *of which the inhabitant is the owner.*

The italicized language is clear: Property is assessed to the owner.

In contrast, the special provision in section 428.1(5) provides:

> Property under mortgage or lease is to be listed by and taxed to the mortgagor or lessor, unless listed by the mortgagee or lessee.

This provision remains unchanged from Iowa Code section 428.1(6) of the 1975 Code considered in *Ruan*.

In *City of Cedar Falls v. Flett*, 330 N.W.2d 251, 257 (Iowa 1983), we adopted this definition of ownership:

> Collection of rights to use and enjoy property, including the right to transmit it to others. . . . The complete dominion, title, or proprietary right in a thing or claim. The entirety of the powers of use and disposal allowed by law.
>
> The right of one or more persons to possess and use a thing to the exclusion of others. The right by which a thing belongs to some one in particular, to the exclusion of all other persons. The exclusive right of possession, enjoyment, and disposal; involving as an essential attribute the right to control, handle and dispose.

Under this definition, there is ample record evidence that Cox retains ownership of the house drops even though the drops are permanently attached to the subscriber's home. Cox pays the cost of installing or replacing the drops. The only costs the subscriber bears are those incurred for any modifications to suit the particular needs of the subscriber. In the future Cox will also bear the cost of any replacement of house drops in a planned upgrade of the entire cable system.

House drops are rarely removed once they have been installed. Cox reuses existing house drops when successive owners wish to subscribe. Such owners merely hook up to the existing house drop.

Cox receives ongoing economic benefits from the house drops. For accounting purposes Cox treats the house drops like it treats the rest of its distribution system. Cox carries the house drops on its books as an asset and depreciates them for tax purposes. Such depreciation is generally reserved for the owner of an income-producing asset. *See Urbanek v. United States*, 731 F.2d 870, 874 n. 7 (Fed.Cir.), *cert. denied*, 469 U.S. 1034, 105 S.Ct. 508, 83 L.Ed.2d 398 (1984). Cox bears the risk of loss on the house drops just as it does on the distribution system. And, significantly, when a cable system is purchased, house drops are included. *Cf. Continental Cablevision v. City of Roseville*, 430 Mich. 727, 740–46, 425 N.W.2d 53, 59–62 (1988) (house drops that connected main cables of cable television company were personalty belonging to cable television company rather than fixtures belonging to homeowners, and thus cable television company was properly subject to personal property tax assessment on house drops; cable television company treated house drops as capitalized costs for federal and state tax return purposes, and, through its service agreements with customers, maintained exclusive control over components, even though house drops were not routinely removed following termination of cable television service).

■ III. Cox also challenges the 1991 and 1992 tax assessment valuation of $770,472 for the house drops. Like the district court, we find that Cox did not prove such assessment was excessive.

Because we agree with the district court that the house drops are assessable to Cox and that Cox failed to prove the valuation assessment was excessive, we affirm.

**AFFIRMED.**